945 P.2d 196 (1997)
133 Wash.2d 332
In the Matter of the Personal Restraint Petition of Mark MAXFIELD, Petitioner.
In the Matter of the Personal Restraint Petition of Pamela MAXFIELD, Petitioner.
Nos. 64083-1, 64200-1.
Supreme Court of Washington, En Banc.
Argued March 11, 1997.
Decided October 16, 1997.
*197 MacDonald, Hoague & Bayless, Timothy Ford, Seattle, for Petitioner.
David Skeen, Jefferson County Prosecutor, Port Townsend, for Respondent State of Washington Jefferson.
David Bruneau, Clallam County Prosecutor, Port Angeles, for Respondent State of Washington Clallam.
JOHNSON, Justice.
In these two consolidated personal restraint petitions, we are asked to decide whether Mark and Pamela Maxfield were denied effective assistance of counsel when their attorney failed to adequately brief the state constitutional issue in the direct appeal of their convictions for possession and manufacture of a controlled substance. Specifically, we must decide whether there is a state constitutional protected privacy interest in electric consumption records prohibiting disclosure of such records by a public utility district employee. Because the Maxfields' rights under article I, section 7 of the Washington Constitution were violated, we hold they were denied effective assistance of counsel and grant their petition to vacate their convictions and dismiss the charges.

FACTS
In late 1991 and early 1992, Mark and Pamela Maxfield were convicted of possession and manufacture of a controlled substance. The convictions arose out of the Maxfields' involvement in two marijuana grow operations in Clallam and Jefferson counties. We affirmed those convictions in State v. Maxfield, 125 Wash.2d 378, 886 P.2d 123 (1994).
The genesis of the State's investigation of the Maxfields was a telephone call from Warner Childress, the treasurer-comptroller of the Clallam County Public Utility District (PUD), to a member of the Clallam County Drug Task Force (Drug Task Force). Childress was the PUD's designated contact person for law enforcement. He had also attended general PUD employee meetings where members of local law enforcement requested assistance in the form of information on suspicious activities.
On June 6, 1991, Drug Task Force member Kirk D. Chaney received a telephone call from Childress, informing Chaney of records indicating high power usage at 431 Atterbury Road. During the telephone call, Childress told Chaney there were two meters on the 431 Atterbury Road property, one on the house and one on the garage, and the meter on the garage indicated high readings. Chaney testified that Childress also told him the PUD had replaced two transformers at that location because of the load generated by the *198 power usage in the garage. Childress testified he did not remember whether he learned of the blown transformers before or after the call to Chaney. Childress also testified that while the electric consumption records were high, they did not indicate an increase in consumption because the service at 431 Atterbury Road was new service.
Although he did not recall this specific instance, Childress testified he usually received information about suspicious power levels from meter readers and then he or the meter reader would contact the Drug Task Force. He had previously contacted the Drug Task Force on his own initiative on at least six occasions.
Based on this contact and pursuant to RCW 42.17.314 (the public disclosure act), the Drug Task Force requested the power records for 431 Atterbury Road and began an investigation. Ultimately, the Drug Task Force obtained a search warrant for 431 Atterbury Road and discovered a marijuana grow operation.[1] The Maxfields were charged with possession of a controlled substance and intent to manufacture or deliver a controlled substance. Maxfield, 125 Wash.2d at 384, 886 P.2d 123. The trial court denied the Maxfields' motion to suppress the evidence and both were convicted based on stipulated facts. Maxfield, 125 Wash.2d at 384, 886 P.2d 123. On direct appeal, this court held RCW 42.17.314 had been complied with and the Maxfields' Fourth Amendment rights had not been infringed. This court specifically declined to address the question of the Maxfields' privacy interest under the state constitution because of defense counsel's failure to brief the Gunwall[2] factors. Maxfield, 125 Wash.2d at 394, 886 P.2d 123.
Following their direct appeal, the Maxfields individually filed personal restraint petitions, requesting relief based on double jeopardy and ineffective assistance of counsel for failure to brief the Gunwall factors. The Court of Appeals dismissed both petitions, holding double jeopardy was not implicated and Petitioners had failed to meet their burden on the ineffective assistance of counsel claim because actions of public utility district employees do not implicate the state constitution. In re Personal Restraint of Maxfield, 81 Wash.App. 705, 915 P.2d 1134 (1996). We granted discretionary review solely on the state constitutional issue.

ANALYSIS

I
The sole issue remaining in the review of the Maxfields' PRPs involves the extent of protection afforded state citizens under article I, section 7. As required by our case law, the Maxfields have completed the requisite first step in a state constitutional case, allowing for meaningful review in this court, by adequately briefing the Gunwall factors. See City of Seattle v. McCready, 123 Wash.2d 260, 267-68, 868 P.2d 134 (1994); State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).
The specific provision of our state constitution at issue is article I, section 7: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7. Before undertaking a Gunwall analysis and determining the extent of article I, section 7's protections in this context, we must first determine whether there is state action such that the provision is applicable at all. As a general proposition, neither state nor federal constitutional protections against unreasonable search and seizure are implicated in the absence of state action. See Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159 (1921); State v. Ludvik, 40 Wash.App. 257, 262, 698 P.2d 1064 (1985); 1 Wayne R. LaFave, Search and Seizure § 1.8 (3d ed.1996). While state action is required, action by law enforcement is not necessary to invoke the protections of *199 article I, section 7. State v. Vonhof, 51 Wash.App. 33, 37, 751 P.2d 1221 (1988) (action by tax appraiser implicates article I, section 7); see also McCready, 123 Wash.2d 260, 868 P.2d 134 (article I, section 7 applies to city building inspectors' authority to perform nonconsensual inspections.); Kuehn v. Renton Sch. Dist. No. 403, 103 Wash.2d 594, 602, 694 P.2d 1078 (1985) (school officials and parents were state actors for purposes of Fourth Amendment and article I, section 7 when conducting general search of students luggage).
Here, the complained of action was undertaken by Warner Childress, the treasurer-comptroller of the PUD. Public utility districts are municipal corporations, created and defined by statute, and with only those powers conferred on them by charter, statute, or the constitution. City of Tacoma v. Taxpayers of Tacoma, 108 Wash.2d 679, 685-86, 743 P.2d 793 (1987); see RCW 54.04.020. So long as Childress was acting in his official governmental capacity, his actions invoke the protections of article I, section 7. See Vonhof, 51 Wash.App. at 37, 751 P.2d 1221 (tax appraiser acting in official capacity is state actor); Ludvik, 40 Wash.App. at 262-63, 698 P.2d 1064 (state game agent was not acting in official capacity when he viewed drug transactions from his home).
There is no question that Childress was acting in his official capacity as the treasurer-comptroller, and designated law enforcement contact, when he noticed or was alerted to the Maxfields' electric consumption records and contacted the Drug Task Force. Childress testified that in the course of his employment, if he discovered or was alerted to suspicious power usage he would contact the Drug Task Force, and had done so on at least six previous occasions. He also testified law enforcement officers had previously made presentations to the PUD's employees asking for assistance in identifying any suspicious activities they might discover. Here, in the same manner as the tax appraiser in Vonhof, Childress was acting in his official capacity when he discovered the high electric consumption levels at 431 Atterbury Road and contacted the police; therefore, we find the constitutional protections in article I, section 7 are implicated in this case.

II
Having determined article I, section 7 applies, we must next examine that provision and determine whether the Maxfields have a protected privacy interest in their electric consumption records prohibiting disclosure by a PUD employee without authority of law. The framework used to make such determinations is set forth in Gunwall, and consists of six nonexclusive criteria. Gunwall, 106 Wash.2d at 58, 720 P.2d 808. In Gunwall, and on numerous subsequent occasions, this court has examined the state constitutional provision at issue here, article I, section 7, and found that the protections it affords are "qualitatively different from, and in some cases broader than, those provided by the Fourth Amendment." McCready, 123 Wash.2d at 267, 868 P.2d 134; see, e.g., State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990); Gunwall, 106 Wash.2d 54, 720 P.2d 808. Examining article I, section 7 in light of Gunwall, specifically its language, structure, and our preexisting case law and statutes, we hold there is a privacy interest in electric consumption records preventing their disclosure by a public utility district employee without authority of law. In keeping with our approach in Boland, we adopt Gunwall's and State v. Young's analysis of the first, second, third and fifth Gunwall factors because those cases examined the same constitutional provision at issue here in similar contexts. Boland, 115 Wash.2d at 576, 800 P.2d 1112; Gunwall, 106 Wash.2d at 64-67, 720 P.2d 808; State v. Young, 123 Wash.2d 173, 179-80, 867 P.2d 593 (1994).
On its face, article I, section 7's structure and language are materially different from the Fourth Amendment. See McCready, 123 Wash.2d at 270, 868 P.2d 134. Article I, section 7 breaks down into two main components: "private affairs" and "authority of law." This court has frequently focused on the "private affairs" language in determining the scope of article I, section 7's protection. See Boland, 115 Wash.2d at 577, 800 P.2d 1112; Gunwall, 106 Wash.2d at 65, 720 P.2d 808; State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984). Here, as in those prior *200 cases, the "private affairs" language of article I, section 7 provides the key to resolving the question at hand. However, an equally important second step requires an inquiry into whether there exists the "authority of law" to disturb one's "private affairs." See McCready, 123 Wash.2d at 270, 868 P.2d 134. Therefore, we proceed with our analysis using this two-step approach.

"Private Affairs"
We have defined the scope of article I, section 7's right of privacy as focusing on "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass...." Myrick, 102 Wash.2d at 511, 688 P.2d 151. "The assessment of whether a cognizable privacy interest exists under [article I, section 7] is thus not merely an inquiry into a person's subjective expectation of privacy but is rather an examination of whether the expectation is one which a citizen of this state should be entitled to hold." McCready, 123 Wash.2d at 270, 868 P.2d 134.
We have previously found cognizable privacy interests under article I, section 7 in telephone numbers called,[3] garbage,[4] and thermal heat waste.[5] In Young, this court found article I, section 7 prohibited infrared surveillance of a home without a warrant. In determining the scope of article I, section 7, the court stated:
Unlike the Fourth Amendment, Const. art. 1, section 7 "clearly recognizes an individual's right to privacy with no express limitations". [State v.] Simpson, 95 Wash.2d [170], 178, [622 P.2d 1199 (1980)]. With this foundation, both this court and the Legislature decided an individual has a protected privacy interest in power usage records. In re Rosier, 105 Wash.2d 606, 717 P.2d 1353 (1986); State v. Maxwell, 114 Wash.2d 761, 791 P.2d 223 (1990); RCW 42.17.314. In Rosier, we recognized that the important policy of public disclosure of information relating to the performance of public officials cannot encroach upon the general personal privacy rights to which every citizen is entitled. Rosier, 105 Wash.2d at 611 [717 P.2d 1353]. The Legislature confirmed the importance of this right by prohibiting the disclosure of a person's electrical consumption without a written assertion that a particular electrical utility customer is suspected of criminal activity. RCW 42.17.314.
Young, 123 Wash.2d at 180, 867 P.2d 593. This analysis applies with even greater force in the context here. While the privacy interest in electric consumption records may be characterized as "minimal,"[6] it is still a privacy interest subject to the protections of article I, section 7.
Finding a privacy interest in electric consumption records is in keeping with our holdings in Young and Gunwall. In Gunwall, we held that placing a pen register (which records outgoing telephone numbers) on a telephone line and obtaining long distance records from the telephone company without a warrant were unreasonable intrusions into an individual's private affairs. Gunwall, 106 Wash.2d at 68, 720 P.2d 808. In reaching that conclusion, we relied in part on the fact that "[a] telephone is a necessary component of modern life" and the necessary disclosure to the telephone company of numbers dialed does not change the caller's expectation of privacy "into an assumed risk of disclosure to the government." Gunwall, 106 Wash.2d at 67, 720 P.2d 808 (quoting People v. Sporleder, 666 P.2d 135, 141 (Colo.1983)). "This disclosure has been necessitated because of the nature of the instrumentality, but more significantly the disclosure has been made for a limited business purpose and not for release to other persons for other reasons." Gunwall, 106 Wash.2d at 68, 720 P.2d 808 (quoting State v. Hunt, 91 N.J. 338, 347, 450 A.2d 952 (1982)).
Those rationales also apply to electric consumption records. Electricity, even more than telephone service, is a "necessary component" of modern life, pervading every aspect *201 of an individual's business and personal life: it heats our homes, powers our appliances, and lights our nights. A requirement of receiving this service is the disclosure to the power company (and in this case an agent of the state) of one's identity and the amount of electricity being used. The nature of electrical service requires the disclosure of this information, but that disclosure is only for the limited business purpose of obtaining the service.
RCW 42.17.314 recognizes and offers protection for this privacy interest. The statute requires law enforcement officers to articulate in writing a suspicion of individualized criminal activity and a reasonable belief that the information will help determine whether the suspicion is true before they can receive electric consumption records from a public utility district. RCW 42.17.314; State v. Maxwell, 114 Wash.2d 761, 791 P.2d 223 (1990). While this protection is less than that provided by a search warrant, it necessarily recognizes a limited or minimal privacy interest in electric consumption records to prevent the police from going on general "fishing expeditions." In re Rosier, 105 Wash.2d 606, 616, 717 P.2d 1353 (1986). Thus, both this state's case law and statutes recognize a privacy interest in electric consumption records which the citizens of this state are entitled to hold free from governmental trespass. This leads to the next question of what "authority of law" is required before the government is entitled to trespass on a citizen's interest in these records.[7]

"Authority of Law"
The second prong of article I, section 7 requires "authority of law" before an individual's private affairs can be disturbed. "Generally speaking, the `authority of law" required by Const. art. 1, § 7 in order to obtain records includes authority granted by a valid, (i.e., constitutional) statute, the common law or a rule of this court. In the case of long distance toll records, `authority of law' includes legal process such as a search warrant or subpoena." Gunwall, 106 Wash.2d at 68-69, 720 P.2d 808 (citations omitted).
The same is true for obtaining electric consumption records from a public utilities district. As noted above, a public utility district has only those powers authorized by charter, statute, or the constitution. City of Tacoma, 108 Wash.2d at 685-86, 743 P.2d 793. There is no authority, be it statutory or constitutional, for a public utility district to unilaterally disclose facts about the electric consumption records of one of its consumers. Because the privacy interest in electric consumption records is minimal, more closely akin to the toll records addressed in Gunwall than the pen register, the Legislature may enact a statute authorizing such disclosure so long as at least some level of protection exists, e.g., the suspicion of criminal activity requirement in RCW 42.17.314.
In this case, in addition to a lack of statutory authority, there was nothing to indicate a reasonable suspicion of criminal activity at the time the records were disclosed. The service at 431 Atterbury Road was new, thus it did indicate an increase over any previous service. Additionally, the Department of Labor and Industries inspection report, required before service can be started, stated there would be pottery kilns used in the garage at Atterbury Road which consume large amounts of electricity.
In this case, the PUD had no "authority of law" to contact the Drug Task Force and disclose information about the Maxfields' electric consumption records. The "authority of law" for disclosure of such records may not require the full blown protections of a search warrant; however, some "authority of law" is certainly required. In the absence of any "authority of law," the PUD's action unreasonably disturbed the Maxfields' private affairs.

Remedy
The proper remedy for the violation of the Maxfields' privacy rights in this case is the application of the exclusionary rule. The *202 exclusionary rule in this state has a long history, independent from that of the federal rule. See Sanford E. Pitler, The Origin and Development of Washington's Independent Exclusionary Rule: Constitutional Right and Constitutionally Compelled Remedy, 61 Wash. L.Rev. 459 (1986). When an individual's right to privacy is violated, article I, section 7 requires the application of the exclusionary rule. Boland, 115 Wash.2d at 582, 800 P.2d 1112; State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982); Pitler, supra, at 502.
Here, the disclosure by the PUD of the Maxfields' power consumption levels led directly to the evidence recovered in both searches. Because the original disclosure was in violation of article I, section 7, all of the subsequently recovered evidence must be suppressed.

III
The constitutional issue addressed above arose in the context of the Maxfields' personal restraint petitions' claim of ineffective assistance of counsel. They claimed they were denied effective assistance of counsel on their direct appeal when their attorney failed to adequately brief the Gunwall factors. In order to prevail on an appellate ineffective assistance of counsel claim, petitioners must show that the legal issue which appellate counsel failed to raise had merit and that they were actually prejudiced by the failure to raise or adequately raise the issue. In re Personal Restraint of Lord, 123 Wash.2d 296, 314, 868 P.2d 835 (1994). The discussion above demonstrates the merits of the legal issue underlying the Maxfields' claim. Because the application of the exclusionary rule would have resulted in the suppression of all the evidence seized in both searches, the Maxfields have also demonstrated actual prejudice.

CONCLUSION
We hold there is a privacy interest in electric consumption records such that they cannot be disclosed by a public utility district without authority of law. Because no authority of law exists to authorize the disclosure in this case, the disclosure unreasonably disturbed the Petitioners' private affairs. Accordingly, the requests for relief in the Maxfields' personal restraint petitions are granted; the convictions are vacated and the charges dismissed.
SMITH, ALEXANDER and SANDERS, JJ., concur.
MADSEN, Justice (concurring in the majority).
I agree with the dissent that there is no constitutionally protected privacy right in electrical consumption records under article I, section 7 of our state constitution; however, I would adhere to the dissenting opinion which I signed in State v. Maxfield, the direct appeal of this case, by holding that RCW 42.17.314 has been violated. State v. Maxfield, 125 Wash.2d 378, 404, 886 P.2d 123 (1994) (Johnson, J., dissenting) (Maxfield I). I believe the court should take this opportunity to acknowledge that the majority opinion in Maxfield I was erroneous. Since the law enforcement action in this case violated the limited privacy right created by the statute, I concur in the result of the majority.
Instead of correcting the error of Maxfield I, the majority has fashioned a constitutional right based on RCW 42.17.314. Article I, section 7 of our state constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7 (emphasis added). The majority uses RCW 42.17.314 as constitutional "authority of law" and holds its provisions were not met in this case.
Contrary to the assertions of the majority, RCW 42.17.314 cannot constitute "authority of law" under our state constitution. Except in the rarest of circumstances, the "authority of law" required to justify a search pursuant to article I, section 7 consists of a valid search warrant or subpoena issued by a neutral magistrate. State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996).[1] *203 This court has never found that a statute requiring a procedure less than a search warrant or subpoena constitutes "authority of law" justifying an intrusion into the "private affairs" of its citizens.[2] This defies the very nature of our constitutional scheme and would set a precedent of legislative deference that I am unwilling to accept in our state's constitutional jurisprudence. It is the court, not the Legislature, that determines the scope of our constitutional protections.
Apart from this, I do not believe there is a sufficient privacy interest in electrical consumption records to warrant constitutional protection. We have stated that "the privacy interest in ... power usage records is minimal; the information is fairly innocuous and reasonable persons would not be highly offended by [their] release." In re Rosier, 105 Wash.2d 606, 615, 717 P.2d 1353 (1986).[3] In addition, no state having squarely addressed this issue has identified a constitutionally protected privacy right in electrical consumption records under its state constitution, even though each of these states has interpreted its constitution to provide greater protections than the Fourth Amendment. See Samson v. State, 919 P.2d 171 (Alaska.Ct.App.1996) (no reasonable expectation of privacy in utility records exists under art. I, § 22 of the Alaska Constitution); People v. Dunkin, 888 P.2d 305 (Colo.Ct.App.1994) (utility records not protected from disclosure under art. II, § 7 of the Colorado Constitution); State v. Kluss, 125 Idaho 14, 867 P.2d 247 (1993) (power records are not protected from disclosure by art. I, § 17 of the Idaho Constitution).
Washington law does support a minimal privacy interest in electrical consumption records, but it is one the Legislature, not the constitution, has provided. By enacting RCW 42.17.314, a statutory limit to the Public Disclosure Act, the Legislature has defined the procedures that must be followed before a law enforcement authority may obtain electrical consumption records from a public utility district. The Legislature was conscious of the abuses which would occur if a public utility were able to divulge requested power records to law enforcement authorities without some measure of control.
By doing so, the Legislature created a dichotomy between public and private utility companies, but this dichotomy is not illogical. Public utility records are public records and without RCW 42.17.314 they would be accessible to all law enforcement authorities. On the other hand, private utility records need not be disclosed absent consent, a subpoena, or other legal procedure. When one considers that the loyalties of a private utility lie with its customers, not with the police, the very nature of the system provides some measure of protection.
*204 This court's decision in Maxfield I upset the careful balance between law enforcement's need to access public records and the public's right to privacy struck by the Legislature when it enacted RCW 42.17.314. The court should overrule Maxfield I. In Greene v. Rothschild, this court overruled its own determination in a prior appeal of the same case. Greene v. Rothschild, 68 Wash.2d 1, 402 P.2d 356, 414 P.2d 1013 (1966). The court stated, "[t]his case has been before this court before. With regret we have concluded that it was erroneously ... [decided] ... and it is our uncomfortable duty to reverse that determination and dismiss the action." Greene, 68 Wash.2d at 2, 402 P.2d 356, 414 P.2d 1013. Greene noted that the only way to "reach a just result and avoid further error [is] by overruling [the] decision on the first appeal...." Greene, 68 Wash.2d at 5, 402 P.2d 356, 414 P.2d 1013. See also Folsom v. County of Spokane, 111 Wash.2d 256, 759 P.2d 1196 (1988); Pier 67, Inc. v. King County, 78 Wash.2d 48, 469 P.2d 902 (1970). Today we are faced with a similar dilemma.
Although neither party has asked this court to revisit its decision in Maxfield I, the interests of justice dictate that we do so. RAP 1.2(c). "An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision." Folk v. Keene Corp., 113 Wash.2d 645, 659, 782 P.2d 974 (1989).
Maxfield I's holding was clearly erroneous and the majority's decision is a perpetuation of that error, not its solution. In Maxfield I, the court held that a direct, albeit unfocused, solicitation of suspicious electrical records by law enforcement authorities did not implicate RCW 42.17.314[4] because it "does not govern the conduct of public utility district employees; it governs the conduct of law enforcement authorities." Maxfield I, 125 Wash.2d at 392, 886 P.2d 123. As I agreed in joining the dissent:
Misinterpreting RCW 42.17.314, the majority permits the very activity the statute was expressly designed to prohibit. The records here were released without prior statutory compliance. The evidence suggests law enforcement authorities circumvented the statutory requirements by suggesting to public utility district (PUD) officials that they turn over specific information. Under the majority's approach, PUD officials could eviscerate the statutory procedures and turn over all protected records by "voluntarily" sending law enforcement officials a monthly "printout" or "evaluation". This is patently absurd and offends, at the very least, statutory requirements.
Maxfield I, 125 Wash.2d at 404-05, 886 P.2d 123 (Johnson, J., dissenting). By disavowing the most basic tenets of statutory interpretation, the majority in Maxfield I has deprived Washington's citizens of the minimal privacy right in electrical records afforded by the statute. We should not further perpetuate this error.
Since I would not find protection for electrical consumption records under the state constitution, I would hold that there was no ineffective assistance of counsel in this case.[5] It is this court, not the Maxfield's attorney, that has erred. Instead, I would find that our decision in Maxfield I is clearly erroneous *205 and suppress the results of the search in this case because the requirements of RCW 42.17.314 were not met.
GUY, Justice (dissenting).
In its eagerness to find a constitutional right to privacy in the amount of electricity delivered to a particular piece of property, the majority opinion distorts this court's precedent, disregards our statutes, and abandons common sense. Accordingly, I dissent.
The majority comes to the puzzling conclusion that some, but not all, of Washington's citizens have a constitutional right to require their utility company to keep electrical consumption information secret. This "constitutional right" belongs only to those citizens whose electricity is delivered by public utility companiesnot to those of us who live within the boundaries of private utility companies.
To marijuana growers this is important information that will serve as a guide in selecting sites to develop their businesses. To the rest of us, the importance of this case lies in its trivialization of the constitutional right against unreasonable searches and seizures or unreasonable invasions of private matters.
There was no search in this case. There was no seizure. There was no disclosure of private, personal information confidentially entrusted to a power company.
Here, as in State v. Vonhof, 51 Wash.App. 33, 751 P.2d 1221 (1988), a case cited by the majority at pages 198 and 199, a public employee lawfully discovered information that appeared to show criminal conduct. Here, as in Vonhof, there was no search. And here, as in Vonhof, the court should hold that there was no constitutional violation of a right to privacy by disclosure of observations made in the ordinary course of employment.[1]
After creating this "constitutional" right to privacy in electrical power consumed only within the boundaries of a public utility district, the majority goes on to hold that all evidence gained as a result of the utility company employee's disclosure should have been suppressed under this state's exclusionary rule. This is the only case in which this court has applied the exclusionary rule to evidence that did not result from (1) an unlawful search or seizure that was (2) conducted by law enforcement. In support of its conclusion that suppression is mandated, the majority cites to a student comment which appeared in a 1986 law review and to two cases involving unlawful searches by police officers. Majority opinion at 202.[2]
I would affirm the Court of Appeals. I would hold that the Maxfields are unable to show ineffective assistance on the part of their appellate counsel because a briefing of the Gunwall criteria does not support an independent analysis of Const. art. I, § 7.
In determining, in a given case, whether it is appropriate to independently interpret the state constitution, this court examines six nonexclusive factors which were first articulated in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). See State v. Johnson, 128 Wash.2d 431, 444, 909 P.2d 293 (1996). Those factors are: (1) the textual language of the state constitution; (2) significant differences in the texts of parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. Gunwall, 106 Wash.2d at 61-62, 720 P.2d 808.
As the majority notes, this court has previously examined Const. art. I, § 7 under a Gunwall analysis. Only factors (4) and (6) *206 are generally unique to the context in which the interpretation question arises. Johnson, 128 Wash.2d at 445, 909 P.2d 293.
The fourth Gunwall factor requires an examination of preexisting state law in order to determine what kind of protection Washington State has historically accorded information about electrical usage. See State v. Young, 123 Wash.2d 173, 179, 867 P.2d 593 (1994).
The majority relies on our opinions in Young and In re Rosier, 105 Wash.2d 606, 717 P.2d 1353 (1986) to support its conclusion that preexisting law shows an intent to grant a constitutional right to privacy in power records. The majority ignores our case law explaining Young and Rosier, and ignores, as well, the Legislature's response to Rosier.
In our opinion in the direct appeal in the present case, we held that the Young language relied on by the majority is dicta, State v. Maxfield, 125 Wash.2d 378, 391 n. 20, 886 P.2d 123 (1994), and must be read in the context of that case. Neither Rosier nor State v. Maxwell, 114 Wash.2d 761, 791 P.2d 223 (1990), the cases cited in Young, nor the statute, recognizes a privacy right in electrical consumption records. These cases and the statute were thoroughly discussed less than three years ago in State v. Maxfield, 125 Wash.2d at 387-93, 886 P.2d 123.
In Rosier this court examined two requests for public records. Both requests were made to a public utility district in Snohomish County. One was from a political opponent of the utility district's commissioners and asked for the names and addresses of the utility district's approximately 156,000 customers. The second involved requests for records by police officers.
In Rosier, this court did not find a general privacy interest in power consumption records. Instead, we held, "The public has a significant interest in disclosure of information leading to arrest for illegal conduct; but the public in general, as well as any particular individual, has a privacy interest in preventing general "fishing expeditions" by governmental authorities." Rosier, 105 Wash.2d at 615, 717 P.2d 1353. This court went on to hold:
In the present case, the privacy interest in the power usage records is minimal; the information is fairly innocuous and reasonable persons would not be highly offended by its release. We admit that its release to police officers would "highly offend" anyone who engages in illegal activity, e.g., growing marijuana; but this person is not the appropriate measure of a "reasonable person".
Rosier, 105 Wash.2d at 615, 717 P.2d 1353.
Rosier then attempted to redefine "privacy interest" under the public disclosure act, RCW 42.17. Rosier stated that this court recognized a privacy interest, under the terms of the public disclosure law, in any information released by an agency (a) which is matched specifically to a particular individual's name and (b) which reveals a unique fact about the individual. Rosier, 105 Wash.2d at 614-15, 717 P.2d 1353.
During the legislative session immediately following the Rosier decision, the Legislature effectively overruled part of Rosier by nullifying the opinion's new definition of "privacy interest." Laws of 1987, ch. 403. In State v. Maxfield, we held:
Defendants' reliance on Rosier to support an argument that an individual has a substantial privacy interest in electrical consumption records ignores the language of Rosier itself, as well as its subsequent abrogation. Accordingly, Rosier's definition of privacy interest as it relates to the public disclosure act is no longer the law in this state.
State v. Maxfield, 125 Wash.2d at 390-91, 886 P.2d 123 (footnote omitted). See also State v. Maxwell, 114 Wash.2d at 768, 791 P.2d 223.
Maxfield went on to hold that the statute involved here, RCW 42.17.314, applies to law enforcement requests for electrical consumption records. 125 Wash.2d at 391, 886 P.2d 123. "The act does not govern the conduct of public utility district employees; it governs the conduct of law enforcement authorities." 125 Wash.2d at 392, 886 P.2d 123. This court, in Maxfield, went on to hold that the purpose of RCW 42.17.314 was to restrict the ability of law enforcement agencies to *207 conduct "fishing expeditions" into the records of particular individuals. "The statute did not create a privacy right in those records." Maxfield, 125 Wash.2d at 392, 886 P.2d 123. Further, the statute does not prohibit a public utility district from disclosing records. Id.
Although electrical usage records held by public utility districts are protected both by statute and case law from "fishing expeditions" by law enforcement, there is no preexisting state law creating a privacy interest in electrical consumption information generally.
The sixth Gunwall factor addresses whether the subject matter is properly a matter of particular state interest or local concern. This factor often overlaps factor four and, where there is such an overlap, the same discussion applies to both factors. Gunwall, 106 Wash.2d at 67, 720 P.2d 808; State v. Boland, 115 Wash.2d 571, 585, 800 P.2d 1112 (1990) (Guy, J., dissenting).
The majority states that finding a privacy interest in electrical consumption records is in keeping with our holdings in Young and Gunwall. Majority opinion at 200. In fact, the holding of the majority is not consistent with these and other privacy cases decided by this court. For example, this court has previously held that records showing what telephone numbers an individual has dialed are private matters that are protected by Const. art. I, § 7 from pen register interception by law enforcement. Gunwall, 106 Wash.2d at 69, 720 P.2d 808. The Gunwall court determined that the citizens of this state reasonably believe their telephone communications, including the identity of the person called, is a private matter that will not be intruded upon by law enforcement without a warrant. Gunwall, 106 Wash.2d at 68, 720 P.2d 808. In Boland, 115 Wash.2d at 581, 800 P.2d 1112, we held that an individual's trash is protected from warrantless search and seizure by law enforcement. The court based this decision upon a determination that trash can contain personal effects, such as business records, bills, correspondence, magazines, tax records, and other information about a person's activities, associations and beliefs, and that people reasonably believe police will not indiscriminately rummage through their trash bags to discover personal effects. Boland, 115 Wash.2d at 578, 800 P.2d 1112 (citing State v. Tanaka, 67 Haw. 658, 701 P.2d 1274, 1276-77 (1985)).
A statement that power consumption at a particular address appears to be high discloses no discrete information about an individual's activities, not even the individual's name. Maxfield, 125 Wash.2d at 396, 886 P.2d 123. The customer of electrical power does nothing to create the information held by the power company except consume power. Contrary to the majority opinion at 200-01, the Maxfields did not disclose power consumption information to the power company. The electrical consumption information was a record of electrical power delivered to the address. This was not information the Maxfields entrusted to the power company. The information disclosed by the PUD employee here revealed only that the amount of power usage was high. It did not identify any activity of the Maxfields. The information did not provide any intimate details of the Maxfields' lives or identify their friends or political and business associates. Electrical consumption information, unlike telephone or bank records or garbage, does not reveal discrete information about a customer's activities.
Preexisting law does not demonstrate a history of legislative or judicial protection of a general privacy interest in information regarding electrical consumption. Although the State has a particular concern in the conduct of law enforcement officers who want to search utility company records, there is no basis for concluding that the State has a unique concern in protecting electrical consumption records generally.
Therefore, I would hold that briefing of the Gunwall factors by the defendants' appellate counsel would not have resulted in an independent constitutional analysis in the direct appeal of the Maxfields' convictions. Defendants' ineffective assistance of counsel claim should fail.
I would affirm the Court of Appeals.
DURHAM, C.J., and DOLLTVER and TALMADGE, JJ., concur.
NOTES
[1] As a result of the search, another search warrant was obtained for the Maxfields' residence in Jefferson County where a second grow operation was discovered. Maxfield, 125 Wash.2d at 384, 886 P.2d 123. Charges were ultimately brought in both Clallam and Jefferson counties. Id.
[2] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).
[3] Gunwall, 106 Wash.2d 54, 720 P.2d 808.
[4] Boland, 115 Wash.2d 571, 800 P.2d 1112.
[5] Young, 123 Wash.2d 173, 867 P.2d 593.
[6] In re Rosier, 105 Wash.2d 606, 615, 717 P.2d 1353 (1986).
[7] Notably, at oral argument the State conceded there was a privacy interest in electric consumption records.
[1] See State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980) ("warrantless searches and seizures are per se unreasonable"); State v. Hendrickson, 129 Wash.2d 61, 71, 917 P.2d 563 (1996) (exceptions to requirement of a warrant are: "consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and Terry investigative stops"); State v. Bradley, 105 Wash.2d 898, 902, 719 P.2d 546 (1986) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 2031-32, 29 L.Ed.2d 564 (1971) (exceptions to warrant requirement are "`jealously and carefully drawn'")); Houser, 95 Wash.2d at 149, 622 P.2d 1218 (citing Arkansas v. Sanders, 442 U.S. 753, 759, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979) (exceptions to warrant requirement "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.")); see generally Robert F. Utter, Survey of Washington Search and Seizure Law: 1988 Update, 11 U. Puget Sound L.Rev. 411 (1988).
[2] The majority cites State v. Gunwall, 106 Wash.2d 54, 68-69, 720 P.2d 808, 76 A.L.R.4th 517 (1986), for the proposition that RCW 42.17.314 is an appropriate "authority of law." Majority at 201. In the cited portion of Gunwall, we dealt with RCW 9.73.030-040 which required more than a standard warrant to intercept telephone records with a pen register. The statute allowed such intercepts only in cases involving "national security, danger to human life or in the face of imminent arson or riot." Gunwall, 106 Wash.2d at 69, 720 P.2d 808. In that case, we merely recognized the well settled principle that the Legislature has the authority to enact greater, not lesser, protections than the constitution or court provides.
[3] In 1987, In re Rosier, 105 Wash.2d 606, 717 P.2d 1353 (1986), was legislatively overturned. However, the court's concern that the freedom of information act might be misused by law enforcement as a method of conducting "fishing expeditions" was recognized and accepted by the Legislature. That concern is now codified in RCW 42.17.314. See State v. Maxfield, 125 Wash.2d 378, 391, 886 P.2d 123 (1994).
[4] RCW 42.17.314 reads as follows: "A law enforcement authority may not request inspection or copying of records of any person, which belong to a public utility district or a municipally owned electrical utility, unless the authority provides the public utility district or municipally owned electrical utility with a written statement in which the authority states that it suspects that the particular person to whom the records pertain has committed a crime and the authority has a reasonable belief that the records could determine or help determine whether the suspicion might be true. Information obtained in violation of this rule is inadmissible in any criminal proceeding."
[5] To establish ineffective assistance of counsel a defendant must establish that any deficient performance prejudiced the defense. See, eg., State v. Garrett, 124 Wash.2d 504, 518-19, 881 P.2d 185 (1994); Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984). Even if the failure to properly advance a state constitutional argument was deficient, that deficiency could not have prejudiced the defense because there is no state constitutionally protected privacy interest in electrical consumption records. Accordingly, a state constitutional argument could not have affected the outcome of this case.
[1] The public utility district employee involved in this case was understandably concerned that two transformers providing service to a garage on the Maxfields' property had blown due to heavy use. Under the majority opinion, even this information would presumably be constitutionally protected, although the cost of the repeated replacement of the transformers was borne not by the Maxfields but by PUD customers.
[2] State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990) considered whether a police search of defendant's garbage cans violated Const. art. I, § 7. State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982) considered whether a police search incident to an unlawful arrest was admissible.