[No. 19506-2-II.   Division Two.   May 10, 1996.]

*In the Matter of the Personal Restraint of* MARK MAXFIELD, *Petitioner*.

*Timothy K. Ford* and *MacDonald, Hoague & Bayless*, for petitioner.

*Robert W. Strohmeyer* and *Ritchie & Strohmeyer, P.S.*, and *David G. Skeen, Prosecuting Attorney for Jefferson County*, for respondent.

MORGAN, J. — Mark Maxfield has filed a personal restraint petition in which he argues (1) double jeopardy and (2) ineffective assistance of counsel during an earlier appeal to the Washington State Supreme Court. We dismiss the petition with prejudice.

During the summer of 1991, Maxfield was involved in two marijuana grow operations. One was located in a house in Clallam County; the other was located in a house in Jefferson County.[1]

On June 6, 1991, an employee of the local public utility district (PUD) informed the police that power consumption at one of the houses was high. He also said the PUD's records could be examined only after law enforcement filed a request for inspection, pursuant to the public disclosure act, RCW 42.17. The employee had not been directed to call law enforcement with suspicious power readings, or asked to investigate the particular house on which he was reporting.[2]

The police filed a request for inspection and viewed the records. They then secured search warrants, which they executed on July 24. They seized marijuana from each

[1]*State v. Maxfield*, 125 Wn.2d 378, 381, 886 P.2d 123 (1994).

[2]*Maxfield*, 125 Wn.2d at 382.

home, and cars, cash, equipment and many other items from the Clallam County home.

On July 25, Maxfield was charged in Clallam County with manufacture of marijuana and possession of marijuana with intent to deliver. On July 26, he was charged in Jefferson County with possession of marijuana with intent to deliver.

On December 13, 1991, Maxfield was convicted as charged in Jefferson County. He was sentenced to three months in jail.

On January 10, 1992, Maxfield was convicted as charged in Clallam County. He was sentenced to 29 months in prison.

Maxfield appealed his convictions to the Washington Supreme Court. He argued that his privacy rights under the Fourth Amendment to the federal constitution and art. I, § 7 of the state constitution had been violated when the PUD employee informed the police of high power consumption at the Clallam County house.[3] The Supreme Court rejected his Fourth Amendment claim and declined to consider his art. I, § 7 claim. The Court said:

> Defendants have failed to analyze the constitutional provisions involved here under the criteria set forth in *Gunwall*. We therefore will not consider independent state constitutional grounds. As we stated in *Gunwall*, "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion."[4]
>
> Whether an individual customer of a utility company has a privacy interest in electrical consumption records under our state constitution is not properly before us in the present case. Resolution of that issue must await another day.[5]

Meanwhile, back on July 29, 1991, Clallam County served Maxfield with a "Notice of Seizure and Intended

---

[3]*Maxfield*, 125 Wn.2d at 384.

[4]*State v. Gunwall*, 106 Wn.2d 54, 62, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[5]*Maxfield*, 125 Wn.2d at 394–95.

Forfeiture." In the notice, the county announced its intent to forfeit the cars, cash, equipment and other items seized from the Clallam County house.

On September 6, 1991, Maxfield filed an answer in the forfeiture proceeding. In the answer, he claimed to own many of the items that the county intended to forfeit.

On March 26, 1993, the parties entered into a "Stipulated Settlement and Dismissal" of the forfeiture proceeding. The Clallam County Superior Court approved the settlement and entered an appropriate order. The items in issue were then distributed partly to Maxfield and partly to Clallam County.

By means of a personal restraint petition, Maxfield seeks to have his Clallam County criminal convictions set aside on double jeopardy grounds;[6] he does not seek, however, to disturb the stipulated Clallam County forfeiture order. Additionally, he argues that all his convictions should be set aside because his appellate counsel provided ineffective assistance during his earlier appeal to the Supreme Court. We take each issue in turn.

## I.

The double jeopardy clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[7] Generally, it bars trial if three elements are met: (a) jeopardy previously attached,[8]

---

[6]The personal restraint petition is not clear on whether Maxfield is asserting double jeopardy with respect to his convictions in both Clallam and Jefferson Counties. The record, however, does not disclose a forfeiture proceeding in Jefferson County. Accordingly, his double jeopardy challenge relates only to his Clallam County convictions.

[7]U.S. Const. amend. V; Const. art. I, § 9. These constitutional provisions have the same meaning. State v. Gocken, 127 Wn.2d 95, 896 P.2d 1267 (1995).

[8]Serfass v. United States, 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975); State v. Higley, 78 Wn. App. 172, 902 P.2d 659, review denied, 128 Wn.2d 1003 (1995).

(b) jeopardy previously terminated,[9] and (c) the defendant is again in jeopardy "for the same offense."[10] The first two elements determine "former" jeopardy, which is a prerequisite to "double" jeopardy.[11] When "former" jeopardy is assumed or established, the third element determines "double" jeopardy.

Here, Maxfield argues that the Clallam County forfeiture proceeding put him in jeopardy once; that the Clallam County criminal proceeding put him in jeopardy a second time; and that the two proceedings were "for the same offense." Thus, he concludes, the Clallam County criminal proceeding put him twice in jeopardy for the same offense, and his criminal convictions should be set aside.

Maxfield is entitled to relief in the criminal proceeding only if jeopardy attached in the forfeiture proceeding *before* jeopardy attached in the criminal proceeding. If jeopardy attached in the other order, Maxfield might or might not be entitled to relief in the forfeiture proceeding, but he is not entitled to relief in the criminal one.

██ ██ Jeopardy attached in the criminal proceeding when, on January 10, 1992, the trial court accepted Maxfield's plea of guilty.

> Although in jury trials, jeopardy attaches when the jury is sworn, *Crist v. Bretz*, 437 U.S. 28, 38, 98 S. Ct. 2156, 2162, 57 L. Ed. 2d 24 (1978), and in nonjury trials jeopardy attaches "when the court begins to hear evidence," *Serfass v. United States*, 420 U.S. 377, 388, 95 S. Ct. 1055, 1062, 43 L. Ed. 2d 265 (1975), jeopardy attaches to a guilty plea pursuant to a plea agreement upon the *court's acceptance* of the plea agree-

---

[9]*Richardson v. United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984); *Higley*, 78 Wn. App. 172.

[10]*United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).

[11]*See Serfass*, 420 U.S. at 393 ("an accused must suffer jeopardy before he can suffer double jeopardy"); *People v. Marks*, 1 Cal. 4th 56, 820 P.2d 613, 2 Cal. Rptr. 2d 389 (1991) (same).

ment. *United States v. Smith*, 912 F.2d 322, 324 (9th Cir. 1990).[12]

Assuming without holding that jeopardy attached in the forfeiture proceeding, it did not attach until after January 10, 1992. Before that date, the only events in the forfeiture proceeding were Clallam County's notice of intent to forfeit, and Maxfield's filing of an answer. Neither event caused jeopardy to attach in the forfeiture proceeding.[13] Thus, Maxfield was *first* put in jeopardy in the criminal proceeding, and his double jeopardy claim is invalid with respect to that proceeding.

## II.

■ Maxfield argues that his appellate counsel rendered ineffective assistance by failing to argue the so–called *Gun-*

---

[12]*United States v. Ursery*, 59 F.3d 568, 571–72 (6th Cir. 1995), *cert. granted*, 116 S. Ct. 762 (1996); *Fransaw v. Lynaugh*, 810 F.2d 518, 523 & n.9 (5th Cir.), *cert. denied*, 483 U.S. 1008 (1987) (collecting cases); *State v. Crisler*, 73 Wn. App. 219, 223, 868 P.2d 204 (1994), *aff'd by State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995); *see* RCW 9.94A.030(9) (conviction means adjudication of guilt, and includes verdicts of guilty, findings of guilt, and acceptance of pleas of guilt).

Quoting *United States v. Van Moos*, 660 F.2d 748 (9th Cir. 1981), Maxfield argues that "[j]eopardy attaches in the double punishment context when the defendant begins serving the sentence." 660 F.2d at 749. *Van Moos*, however, is unpersuasive. It lacks any analysis at all, and the cases it relies on "are no longer sound law." *United States v. Groceman*, 882 F. Supp. 976, 978 (E.D.Wa. 1995); *see also United States v. Faber*, 57 F.3d 873, 875 n.2 (9th Cir. 1995) (finding *Van Moos* inapplicable in forfeiture proceedings).

[13]*See, e.g., United States v. McDermott*, 64 F.3d 1448, 1455 (10th Cir. 1995) (jeopardy cannot attach earlier than "the adjudicative hearing stage"), *cert. denied*, 116 St. Ct. 930 (1996); *Ursery*, 59 F.3d at 572 (jeopardy attaches when court accepts the stipulation of forfeiture and enters the judgment of forfeiture); *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.) (jeopardy attaches when evidence first presented to the trier of fact), *cert. denied*, 115 S. Ct. 669 (1994); *United States v. Sanchez–Escareno*, 950 F.2d 193, 203 (5th Cir. 1991) (jeopardy attaches when the court begins to hear evidence), *cert. denied*, 113 S. Ct. 123 (1992).

Maxfield relies on *United States v. Barton*, 46 F.3d 51, 52 (9th Cir. 1995). In that case, the defendant pleaded guilty in the criminal proceeding before he filed his answer in the forfeiture proceeding. Thus, the court did not need to hold, and it did not hold, that jeopardy attaches when an answer is filed. Rather, it held only that jeopardy attached *no earlier* than when he filed his answer. That holding does not aid Maxfield here.

*wall* factors[14] in his prior appeal to the Supreme Court. To prevail on an appellate ineffectiveness claim, an appellant "must show the merit of the underlying legal issues his appellate counsel failed to raise or raised improperly and then demonstrate actual prejudice."[15]

Here, a PUD employee volunteered information to the police after conducting a private search of PUD records (i.e., a search without police involvement). Thus, the legal issue is whether art. I, § 7 treats private searches differently from, and more protectively than, the Fourth Amendment.

■ On at least four occasions, the Court of Appeals has held that art. I, § 7 does not protect against private, non-governmental action.[16] For example, Division III stated in *State v. Ludvik*:[17]

> Constitutional guaranties against unreasonable searches and seizures protect only against governmental actions and do not require the application of the exclusionary rule to evidence obtained from private citizens acting on their own initiative. [Numerous citations omitted.] The history and origins of both the fourth amendment to the United States Constitution and article 1, section 7, of the Washington State Constitution clearly show they were intended as a restraint upon sovereign authority; in the absence of state action, they have no application regardless of the scope of protection which would otherwise be afforded under either provision. [Citations omitted.]

■ Additionally, the Supreme Court has twice characterized the privacy interest in power records as "minimal."

[14]*Gunwall*, 106 Wn.2d 54.

[15]*Personal Restraint Petition of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835, 123 Wn.2d 737, 870 P.2d 964, *cert. denied*, 115 S. Ct. 146 (1994).

[16]*State v. Walter*, 66 Wn. App. 862, 867, 833 P.2d 440 (1992), *review denied*, 121 Wn.2d 1033 (1993); *State v. Clark*, 48 Wn. App. 850, 855, 743 P.2d 822, *review denied*, 109 Wn.2d 1015 (1987); *State v. Dold*, 44 Wn. App. 519, 524–25, 722 P.2d 1353 (1986); *State v. Ludvik*, 40 Wn. App. 257, 262, 698 P.2d 1064 (1985).

[17]40 Wn. App. at 262.

Speaking through Justice Pearson in a case involving the public disclosure act, it said:

> [T]he privacy interest in the power usage records is minimal; the information is fairly innocuous and reasonable persons would not be highly offended by its release. We admit that its release to police officers would "highly offend" anyone who engages in illegal activities, *e.g.*, growing marijuana; but this person is not the appropriate measure of a "reasonable person".[18]

And speaking in the Fourth Amendment portion of Maxfield's earlier appeal, it said:

> The United States Supreme Court has concluded that the Fourth Amendment does not prohibit law enforcement from obtaining information without a warrant where the information was initially revealed to a third person, even where the information was initially revealed in confidence and on the assumption that it would be used only for a limited purpose. Thus, under the Fourth Amendment, there is no legitimate expectation of privacy in bank records, or in pen register records of a telephone company showing numbers dialed by a particular individual. An individual's expectation of privacy in power consumption records is far less than that expected in bank records and telephone numbers. Unlike telephone and bank records, power records disclose no discrete information about an individual's activities. Furthermore, as we have previously determined, there is but a minimal privacy interest in power records. Such an interest, if it is actual and subjective, is not one that society is willing to recognize as reasonable. [Citations omitted][19]

These authorities clearly establish that art. I, § 7 does not apply to private, nongovernmental searches such as the one involved here. As a result, Maxfield's art. I, § 7 argument could not have succeeded in his earlier appeal, and he cannot show the elements of a claim for ineffective assistance of counsel.

---

[18]*In re Rosier*, 105 Wn.2d 606, 615, 717 P.2d 1353 (1986).

[19]*Maxfield*, 125 Wn.2d at 395–96.

The personal restraint petition is dismissed with prejudice.

SEINFELD, C.J., and BRIDGEWATER, J., concur.