[No. 18492-3-II.   Division Two.   October 4, 1996.]

THE STATE OF WASHINGTON, *Respondent,* v. LISA J.
BUCKLEY, *Appellant.*

*Thomas E. Doyle* and *Robert M. Quillian*, for appellant.
*Bernardean Broadous, Prosecuting Attorney*, for respondent.

Morgan, J. — After judging Lisa J. Buckley to be an "at-risk youth" under the Family Reconciliation Act (FRA), RCW 13.32A, a juvenile court entered an order requiring Buckley to abide by ten rules. Buckley repeatedly violated the order and was convicted of two counts of criminal contempt. She appeals, arguing the court exceeded its statutory authority and violated double jeopardy. We reverse.

Buckley is a juvenile. On May 6, 1993, when she was 13, her mother filed a petition asking the Thurston County Juvenile Court to supervise her as an "at-risk youth" under the Family Reconciliation Act. On May 12, a commissioner granted the petition and entered an order requiring, among other things, that Buckley attend school, come home after school unless permitted by her mother to do otherwise, obey an 8:00 p.m. curfew Sunday through Thursday, obtain her mother's permission before leaving the house, and not run away from home. The order warned that "[a] party who fails to comply with the terms of this order may be found in contempt."[1]

Between May 28 and October 4, 1993, Buckley's mother

---

[1] Clerk's Papers at 22.

filed multiple contempt motions alleging that Buckley had violated the court's order. Each time, a juvenile court commissioner found Buckley in contempt based on specific instances of past conduct. The commissioner also imposed sanctions that he asserted were remedial, including community service and home detention. The State did not file criminal contempt charges.

On October 20, 1993, a court commissioner appointed a special prosecutor whose assignment was to file criminal contempt charges against Buckley. On the same day, Buckley's mother filed a contempt motion alleging that Buckley had left home on October 5, had not returned until October 14, and had skipped school from October 5 to October 15.

On November 30, 1993, a superior court judge considered the motion and found Buckley in contempt. The court imposed seven days' home detention. It also ordered Buckley to follow all prior court orders and "have perfect attendance at school for [the] next 5 days."[2]

Within a short time, Buckley's mother filed two additional contempt motions. The first alleged that Buckley had skipped school on December 4, 1993. The second alleged that Buckley had been suspended from school on December 7, 1993.

On February 2, 1994, a commissioner considered these motions and found Buckley in contempt. The commissioner did not impose sanctions, but again ordered the special prosecutor to file criminal charges. The special prosecutor did so, and the Thurston County Prosecutor later took control of the case.

On June 28, 1994, the State filed a third amended information charging Buckley with three counts of criminal contempt under RCW 7.21.010 and RCW 7.21.040. The trial court dismissed Count I, and that ruling has not been appealed. Count II alleged that Buckley had violated the court's orders by leaving home without authority on

---

[2]Clerk's Papers at 30.

October 14, 1993. Count III alleged that Buckley had violated the court's orders by skipping school on October 5, October 15, and December 4, 1993. Each count sought sanctions in accordance with RCW 13.32A.250(3), RCW 7.21, and RCW 13.40.

On July 6, 1994, based on stipulated facts, the court found Buckley guilty on Counts II and III. After sentencing, Buckley filed this appeal.

■ Generally, Washington's contempt statutes are set forth in RCW 7.21. Under RCW 7.21.010(1)(b), it is contempt for a person to intentionally disobey a lawful court order.[3] Under RCW 7.21.040(2)(a), a court may impose a punitive sanction if the prosecuting or city attorney files an information that "recit[es] the punitive sanction sought to be imposed."[4] A sanction is punitive, and thus criminal rather than civil, if it is imposed to punish a past contempt of court, results in a determinate sentence, and does not afford the defendant an opportunity to purge the contempt by performing the acts required in the original order.[5] A sanction is remedial, and thus civil rather than criminal, if imposed to coerce an act "yet in the person's power to perform," and the person can purge the contempt simply by performing the act required.[6]

Additional contempt provisions are found in the Family Reconciliation Act, RCW 13.32A. RCW 13.32A.250 provides in part:

> (2) Failure by a party to comply with an order entered under this chapter is a contempt of court as provided in chapter 7.21 RCW, subject to the limitations of subsection (3) of this section.

> (3) The court may impose a fine of up to one hundred dol-

---

[3]*See also King v. Department of Soc. & Health Servs.*, 110 Wn.2d 793, 797, 756 P.2d 1303 (1988).

[4]*See also State v. Hobble*, 126 Wn.2d 283, 292-93, 892 P.2d 85 (1995).

[5]*Hobble*, 126 Wn.2d at 292; *King*, 110 Wn.2d at 799; RCW 7.21.010(2).

[6]RCW 7.21.010(3); *Moreman v. Butcher*, 126 Wn.2d 36, 42-43, 891 P.2d 725 (1995).

lars and imprisonment for up to seven days, or both for contempt of court under this section.

. . . .

(5) A motion for contempt may be made by a parent, a child, juvenile court personnel, or by any public agency, organization, or person having custody of the child under a court order adopted pursuant to this chapter.

Buckley's first argument is that the juvenile court "was without authority under RCW 13.32A.250(2) to . . . elevate [her] into a criminal defendant, i.e., to initiate the process to prosecute Buckley for criminal contempt."[7] She bases her argument on the fact that RCW 13.32A.250(5) does not list the prosecutor as a person who can bring a contempt motion under the FRA.

■ RCW 13.32A.250(2) expressly states that failure to comply with an FRA order is contempt of court as provided in RCW 7.21. RCW 7.21 allows for both civil and criminal contempt proceedings. Logically, it follows that RCW 13.32A.250(2) also allows for both civil and criminal contempt proceedings.

This conclusion is supported by the legislative history of RCW 13.32A.250. The Legislature initially enacted that section in 1981.[8] Seven years later, in 1989, the Legislature enacted RCW 7.21 and, in the same bill, amended RCW 13.32A.250.[9] Before 1989, RCW 13.32A.250 had stated in part:

(1) Failure by a party to comply with an order entered under this chapter is punishable as contempt.

(2) Contempt under this section is punishable by a fine of up to one hundred dollars and imprisonment for up to seven days, or both.

After 1989, RCW 13.32A.250 stated in part:

---

[7]Br. of Appellant at 12.

[8]LAWS OF 1981, ch. 298, § 14.

[9]LAWS OF 1989, ch. 373.

(1) Failure by a party to comply with an order entered under this chapter is a contempt of court as provided in chapter 7.[21] RCW (sections 1 through 7 of this act), subject to the limitations of subsection (2) of this section.

(2) The court may impose a fine of up to one hundred dollars and imprisonment for up to seven days, or both for contempt of court under this section.[10]

Section 4(2)(a) of the 1989 act granted the prosecutor authority to bring an action for criminal contempt and was later codified as RCW 7.21.040(2)(a). Clearly, then, the Legislature intended RCW 13.32A.250 to include prosecutorial authority to bring an action for criminal contempt, notwithstanding that it omitted the prosecutor from RCW 13.32A.250(5).

Buckley's second argument is that her July 6 trial was barred by the double jeopardy clause. She reasons that the November 30 and February 2 orders punished her for leaving home in October and not going to school in October. As a result, she says, she could not be punished again following the July 6 trial.

The double jeopardy clause guarantees that no person shall be twice put in jeopardy for the same offense.[11] Not surprisingly, the double jeopardy clause applies as much to criminal contempt as to other crimes.[12]

For double jeopardy to apply, the accused must have been subjected to two punitive proceedings. A proceeding is criminal rather than civil, and thus punitive rather than remedial, if it is undertaken to punish a past contempt of court, results in a determinate sentence, and does not afford the defendant an opportunity to purge the contempt by performing the acts required in the original

---

[10]Laws of 1989, ch. 373, § 16.

[11]U.S. Const. amend. V. The state double jeopardy clause provides an identical level of protection. Const. art. I, § 9; *State v. Gocken*, 127 Wn.2d 95, 109, 896 P.2d 1267 (1995).

[12]*United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993); *Colombo v. New York*, 405 U.S. 9, 92 S. Ct. 756, 30 L. Ed. 2d 762 (1972).

order.[13] Assuming two punitive proceedings, the double jeopardy clause bars further prosecution if jeopardy attached during the first proceeding, terminated after the first proceeding, and the first and second proceedings are for the "same offense."[14]

The November 30 proceeding was punitive, even though the trial court's printed form used the language of remediation. The trial court imposed a determinate sentence that included seven days of home detention,[15] and it did not afford Buckley an opportunity to purge herself by performing the acts required in the original order. Thus, it was punishing disobedient past acts rather than attempting to coerce future compliance.

The February 2 proceeding was not punitive. Although the court found Buckley in contempt, it imposed no sanction at all.

The only real question on double jeopardy is whether the July 6 proceeding involved the same offenses as the November 30 and February 2 proceedings. As to Count II, the answer is yes. In its November 30 order, the court punished Buckley for leaving home between October 5 and October 14. Thereafter, it could not impose further punishment for that violation. Nonetheless, the court on July 6, 1994, purported to punish Buckley for leaving home on October 14. That order violated double jeopardy and must be reversed.

As to Count III, the answer is only a partial yes. Count III alleges that Buckley intentionally violated the youth at-risk order on October 5, October 14, and December 4,

---

[13]*Hobble*, 126 Wn.2d at 292; *King*, 110 Wn.2d at 799; RCW 7.21.010(2).

[14]*State v. Corrado*, 81 Wn. App. 640, 645, 915 P.2d 1121 (1996); *Petition of Maxfield*, 81 Wn. App. 705, 709-10, 915 P.2d 1134 (1996); *State v. Anderson*, 81 Wn. App. 636, 638-39, 915 P.2d 1138 (1996); *State v. Higley*, 78 Wn. App. 172, 179, 902 P.2d 659, *review denied*, 128 Wn.2d 1003 (1995).

[15]*Cf. State v. Speaks*, 119 Wn.2d 204, 829 P.2d 1096 (1992) (home detention with electronic monitoring counts as jail time under RCW 9.94A.030 and RCW 9.94A.120).

1993, "by not attending school."[16] The November 30 order found that Buckley had skipped school from October 4 through October 15, 1993, and punished Buckley for those transgressions. Neither the November 30 order nor the February 2 order, however, punished Buckley for skipping school on December 4. Accordingly, Count III is barred by double jeopardy to the extent that it is based on Buckley's skipping school on October 5 and October 14, but not to the extent that it is based on Buckley's skipping school on December 4. Because we do not know whether the trial court would re-impose the same sentence for only the December 4 violation, we remand for resentencing on Count III.

Count II is reversed with directions to dismiss. Count III is reversed and remanded for resentencing.

SEINFELD, C.J., and BRIDGEWATER, J., concur.