[No. 34873-0-II. Division Two. August 28, 2007.]

*In the Matter of the Interest of J.L.*

*Catherine E. Glinski*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Todd L. Dowell, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — Effectively addressing the problem of at-risk youth and school attendance is a major and complex dilemma facing schools and the juvenile courts. In an attempt to protect and guide children, our legislature mandates school attendance for children age 8 through 17. RCW 28A.225.010(1). We do not question the rehabilitative motives underlying statutes purporting to authorize juvenile court orders to detain truant juveniles. Nevertheless, due process prohibits incarceration without due process of law. Incarcerating truants is a punishment that may not be constitutionally imposed without first satisfying the due process protections attendant criminal prosecutions.

¶2 Following her third contempt hearing, J.L.[1] admitted to the Kitsap County Juvenile Court that she was a truant, again. J.L. had repeatedly failed to comply with its order to attend school and failed to comply with conditions suspending detention sanctions previously imposed and, therefore, the juvenile court found her in contempt and imposed two days of secured detention, which J.L. served. It also suspended an additional four days of secure detention.

¶3 On appeal, J.L. challenges the juvenile court's order imposing detention as a sanction for her civil contempt in the truancy proceeding. Specifically, J.L. argues that the juvenile court violated her right to due process by punishing her without providing her an opportunity to purge the contempt and avoid incarceration. We agree. Thus, we vacate the juvenile court's contempt finding.

---

[1] Because of the nature of this case, some confidentiality is appropriate. Accordingly, we have determined, pursuant to RAP 3.4, that the name of the juvenile involved will not be used in the case caption or the body of this opinion.

## FACTS

¶4 On May 19, 2005, Bremerton High School petitioned the Kitsap County Juvenile Department for an order to compel J.L. to attend school. The petition alleged that J.L. (date of birth July 13, 1989) had 42 unexcused absences out of 150 possible school days and established that the school had taken all mandatory steps to eliminate or reduce her absences, but that those efforts had failed. The petition also alleged that court intervention and supervision was necessary.

¶5 On October 21, 2005, J.L. admitted to the juvenile court that she had been truant, as alleged by the school, and that she had missed more days after the school filed the petition. The juvenile court ordered J.L. to attend school with no skips, unexcused absences, suspensions, or expulsions for the remaining school year. The order also warned J.L. that violation of this order could result in a finding of contempt and imposition of up to seven days of detention for each violation. J.L. was present at the hearing and signed the order. Subsequently, J.L. violated the juvenile court's order and it found her in contempt on three separate occasions.

¶6 On December 16, 2005, J.L. appeared before the juvenile court and admitted that she had four additional unexcused absences as alleged in the school's first contempt petition filed in November 2005. The juvenile court found J.L. in contempt and ordered that she perform 16 hours of community service by February 17, 2006; complete a tour of the detention facility by January 7, 2006; and serve four days of detention. It suspended the four days of detention upon the explicit condition[2] that J.L. comply with the order. J.L. acknowledged her understanding that the detention

---

[2] In its oral ruling, the juvenile court told J.L. that the four days of secure detention was suspended provided she followed the order by attending school for the remainder of the school year.

days would be "purged" if she successfully complied with the order. But she did not comply.

¶7 On March 3, 2006, J.L. again appeared before the juvenile court and admitted that she had been truant by missing four days of school (after December 16), as alleged by the school's second contempt petition. J.L. claimed that she had worked the 16 hours of community service but did not have the proof to present to the juvenile court. J.L. also admitted that she had failed to complete the tour of the detention facility as ordered. The juvenile court found J.L. had failed to comply with the condition that she attend school and ordered that she serve two of the four suspended days of secure detention imposed under the first contempt order. The juvenile court allowed J.L. to serve the two days in the alternative to detention work crew. In addition, the court converted the 16 hours of community service to two days of secure detention suspended from the first contempt finding. The juvenile court also allowed J.L. to serve these days on work crew and stated that J.L. could avoid serving those two days by providing proof that she had completed the 16 hours community service as she claimed. The juvenile court again ordered J.L. to complete a tour of the detention facility but extended the date for completion to March 4, 2006.

¶8 In March 2006, J.L. missed several days of school and on May 19, 2006, J.L. appeared and admitted that she had been truant for five days as alleged in the school's third contempt petition. Further, J.L. had not served the four days of detention on work crew, nor had she shown proof of completing the 16 hours of community service. This proof would have purged two of the four days of the first work crew sanction.

¶9 Additionally, J.L. violated the juvenile court's second contempt order by failing to attend school after the March contempt hearing and, thus, the court imposed the four days of detention that it had suspended following the second contempt hearing. J.L. had completed a tour of the detention facility.

¶10 At J.L.'s third contempt hearing, the juvenile court imposed two secure detention days out of the four detention work crew days from the first contempt hearing. The juvenile court did not impose any of the four days of suspended detention from the second contempt. This time, the juvenile court did not conditionally suspend the sanction and J.L. served two out of the eight days of secured detention. J.L. timely appealed.

## DISCUSSION

MOOTNESS

■ ¶11 The State asks that we decline to review this issue as it is now moot. We agree that, as to J.L., we can grant no relief. The scope of a juvenile court's authority to incarcerate truants is an issue involving juveniles over whom the court frequently loses jurisdiction before the appeal process has run its course, rendering the individual case moot. But the issue of whether a truant can constitutionally be incarcerated under RCW 28A.225.090 is a continuing issue of substantial public interest. *In re Interest of M.B.*, 101 Wn. App. 425, 432, 3 P.3d 780 (2000) (citing *In re Det. of Swanson*, 115 Wn.2d 21, 24-25, 793 P.2d 962, 804 P.2d 1 (1990)), *review denied*, 142 Wn.2d 1027 (2001). Therefore, we address J.L.'s claim that the truancy contempt procedures violated due process.

CONTEMPT SANCTIONS

■ ¶12 In Washington, school attendance is mandatory for minor children age 8 through 17. RCW 28A.225.010(1). Courts may order truant children to attend school. RCW 28A.225.090(1). According to the compulsory attendance statute, failure to comply with such an order may result in court-imposed sanctions, including detention under RCW 7.21.030(2)(e). RCW 28A.225.090(2).

¶13 RCW 7.21.030(2)(e) provides for,

[i]n cases under chapters 13.32A, 13.34, and 28A.225 RCW, commitment to juvenile detention for a period of time not to

exceed seven days. This sanction may be imposed in addition to, or as an alternative to, any other remedial sanction authorized by this chapter. This remedy is specifically determined to be a *remedial* sanction.

(Emphasis added.) But we have held that it is the nature of the sanction, not the legislature's label, that determines whether a sanction is remedial or punitive. *State v. A.L.H.,* 116 Wn. App. 158, 163, 64 P.3d 1262 (2003) (quoting *In re Interest of Rebecca K.,* 101 Wn. App. 309, 317, 2 P.3d 501 (2000)); *M.B.,* 101 Wn. App. at 445-46 (quoting *Hicks v. Feiock,* 485 U.S. 624, 636, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988)).

¶14 Division One of this court observed, "The amendments and the legislative findings indicate the legislature intended detention, standing alone, to be a remedial sanction for status offense contempts. . . . But detention is still incarceration and still a place of punishment. The character of a sanction does not change simply because the legislature changes its label." *M.B.,* 101 Wn. App. at 443-45. In addressing this issue, Division Three of this court stated, "Criminal contempt proceedings must be initiated by a criminal information filed by the State in order to comply with due process." *Rebecca K.,* 101 Wn. App. at 317.

¶15 Here, under the juvenile court's reading of RCW 28A.225.090(2) and RCW 7.21.030, it had the authority to incarcerate J.L. up to 7 days for each violation of its order that she attend school. Thus, on May 19, 2006, the juvenile court believed that it had the authority to incarcerate J.L. in a juvenile detention facility for 91 days,[3] longer than the standard disposition range for the felony of first degree theft, RCW 9A.56.030, which carries a maximum local sanction of 30 days of confinement. RCW 13.40.0357.[4]

---

[3] Seven days of detention imposed for each of the 13 days J.L. missed following the first contempt order.

[4] The local sanction imposed on a juvenile offender with zero or one prior criminal history adjudication. This sanction may also include 0 to 12 months of

¶16 The State contends that the legislature and the juvenile court intended the detention to be remedial, that is, to remedy J.L.'s failure to attend school and comply with the court's orders.

¶17 Remedial sanctions coerce performance of an act that is within the person's immediate power to perform. Punitive sanctions punish the person's failure to perform an act in the past. RCW 7.21.010(2), (3); *M.B.*, 101 Wn. App. at 438. A conditional sanction is remedial if the contemnor[5] has the ability to purge the contempt and avoid sanction by immediately complying with a condition. *M.B.*, 101 Wn. App. at 439. A contempt sanction involving detention is coercive and remedial rather than punitive so long as the contemnor has the *immediate* opportunity to purge. If there is no opportunity to purge, the detention is punitive rather than remedial. *M.B.*, 101 Wn. App. at 439; *In re Dependency of A.K.*, 130 Wn. App. 862, 867, 125 P.3d 220 (2005), *review granted*, 158 Wn.2d 1006 (2006).

¶18 In *M.B.*, Division One of this court dealt with the issue of effective sanctions in the context of juvenile truancy under RCW 28A.225.090(2) and RCW 7.21.030(2)(e). The *M.B.* court acknowledged that a truant child could never fully comply with the order to attend school by "going to school yesterday." 101 Wn. App. at 448. Nevertheless, it pragmatically explained that the juvenile court's powers should not be limited to only accepting a juvenile's promise to attend school:

> A contemnor's promise of compliance is the first step. But where that promise is demonstrably unreliable, the court can insist on more than mere words of promise as a means of purging contempt. To conclude otherwise would render the statutes unenforceable and reduce the court to the level of beggar.
>
> The challenge lies in determining how courts can exercise their discretion to fashion an appropriate purge condition such

community supervision, and/or 0 to 150 hours of community restitution, and/or $0 to $500 fine. RCW 13.40.0357.

[5] "Contemner," also "contemnor," is defined as "one that is held to be in contempt of court." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 491 (1969).

that the court is assured of the contemnor's future compliance while also ensuring that the sanction is remedial.

*M.B.*, 101 Wn. App. at 448-49. Thus, the *M.B.* court noted that the juvenile court must be entitled to fashion an appropriate purge condition that will ensure the juvenile's future compliance with its order while keeping the sanction remedial. 101 Wn. App. at 448-49. Any condition that would satisfy the court of the juvenile's future compliance is permitted so long as the juvenile court "establishes a meaningful purge condition that serves remedial aims, can be fulfilled by the child, and is reasonably related to the cause or nature of the contempt. Upon performance of the condition, the child must be released." *M.B.*, 101 Wn. App. at 451. The *M.B.* court gave an example of a possible condition: ordering the juvenile to write a substantial paper with a subject matter reasonably related to the nature and cause of the contempt. 101 Wn. App. at 458-60.

 ¶19 But here, there was no such purge condition. Instead, on three different occasions, J.L. violated the court's order that she attend school and the juvenile court imposed detention. It suspended the detention days on conditions, but J.L. could not immediately satisfy those conditions and purge her detention jeopardy. During the first contempt hearing, the juvenile court told J.L. that if she succeeded in complying with the order by attending school, the four days of secure detention would "fade away." Report of Proceedings (RP) (Dec. 16, 2005) at 4. While it no doubt intended to create an opportunity for J.L. to remedy her failure to attend school, the court actually imposed a determinate sentence and suspended it on conditions. RCW 9.94A.575. This is a criminal sentence, not a remedial civil penalty. *See In re Marriage of Didier*, 134 Wn. App. 490, 504-05, 140 P.3d 607 (2006), *review denied*, 160 Wn.2d 1012 (2007). J.L. did not comply with the order and, at the second contempt hearing, the juvenile court ordered J.L. to serve her detention sentence on the work crew. But this sentence is nonetheless a deprivation of liberty.

¶20 J.L. continued to violate the court's order that she attend school. During the third contempt hearing, citing to *M.B.*, defense counsel requested that the juvenile court provide a purge condition to its latest sanction. The juvenile court stated that it was not familiar with the holding in *M.B.* but noted that the statute, RCW 7.21.030(2)(e), expressly provides that its contempt sanction, including up to seven days detention, is remedial rather than punitive. The juvenile court elaborated:

I think given that this is the third trip here to the courthouse, and that the prior sanctions which have been imposed were to a great degree not complied with—I mean, there was an opportunity to do community service work that wasn't fulfilled. There was an opportunity . . . to do time on the weekends that was not fulfilled—I'm going to try two days in [detention].

RP (May 19, 2006) at 10. The juvenile court then imposed two days of secure detention and conditionally suspended four additional days of secure detention.

¶21 The State argues that the juvenile court gave J.L. the chance to purge (by complying with its order that she attend school) and avoid detention but that J.L. chose not to purge. In essence, the State contends that the juvenile court's imposition of the conditionally suspended sanctions against J.L. was the purge condition. But this reading misperceives a suspended criminal sanction and a valid purge condition. To be valid, a purge condition must be within the contemnor's capacity to complete at the time the sanction is imposed. For example, in a child support situation, the contemnor will not be incarcerated if back child support is paid and must be released immediately upon payment of back child support. *Decker v. Decker*, 52 Wn.2d 456, 465, 326 P.2d 332 (1958). And in another case, a contemnor who has refused to divulge the name of a source or witness to a crime will be released upon revealing that person's name, *see, e.g., In re Grand Jury Subpoena, Judith Miller*, 370 U.S. App. D.C. 1, 438 F.3d 1138 (2006) (Miller held in contempt for refusing to comply with grand jury subpoenas to give evidence relating to confidential

sources),[6] while the contemnor who refuses to comply with a court order turning over subpoenaed documents will be released on tender of those documents to the court. *See, e.g., Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590, 67 S. Ct. 918, 91 L. Ed. 1117 (1947). Here, even under the juvenile court's initial contempt order, J.L. could not immediately satisfy the conditions and remained in jeopardy of incarceration.

¶22 Thus, the juvenile court did not provide any genuine means for J.L. to purge the contempt; the sanction was punitive, imposed and suspended on conditions and, thus, criminal. *M.B.*, 101 Wn. App. at 439. No court, including the juvenile court, may impose criminal contempt sanctions unless the contemnor has been afforded the same due process rights afforded other criminal defendants. *In re Pers. Restraint of King*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988); *A.L.H.*, 116 Wn. App. at 164; *M.B.*, 101 Wn. App. at 439. These due process rights include the initiation of criminal action by filing of charges by the prosecutor, assistance of counsel, privilege against self-incrimination, and proof beyond a reasonable doubt. *M.B.*, 101 Wn. App. at 440 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *State v. Buckley*, 83 Wn. App. 707, 713, 924 P.2d 40 (1996)). J.L. was not afforded these due process rights, and her incarceration was unlawful.

¶23 We are mindful of the dilemma presented by the interplay of statutes like RCW 28A.225.090(2) and RCW 7.21.030(2)(e). *See, e.g., A.L.H.*, 116 Wn. App. 158. But incarceration, whether denominated "confinement" or "detention," even when done for the noble purpose of rehabilitating and correcting a child's self-endangering actions, is, nonetheless, the deprivation of liberty which no court in this land may order without first satisfying the due process

---

[6] Miller was released after spending 85 days in jail, when she agreed to testify. Susan Schmidt & Jim VandeHei, *N.Y. Times Reporter Released From Jail*, WASH. POST, Sept. 30, 2005, at A01, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2005/10/19/AR2005101900795.html.

requirements of both the state and federal constitutions. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 530, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (" '[i]t is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection' " (alteration in original) (quoting *Jones v. United States*, 463 U.S. 354, 361, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983))).

¶24 Accordingly, we vacate the juvenile court's order finding J.L. in contempt.

HOUGHTON, C.J., and VAN DEREN, J., concur.