# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | DIVISION ONE |
| | ) | |
| ARADHNA FORREST (f/k/a Luthra), | ) | No. 74034-2-I |
| | ) | (consol. with No. 74735-5-I, |
| Respondent, | ) | No. 75135-2-I, and |
| | ) | No. 75395-9-I) |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| VIKAS LUTHRA, | ) | |
| | ) | FILED: February 6, 2017 |
| Appellant. | ) | |
| | ) | |

DWYER, J. — Vikas Luthra appeals from consecutive contempt orders entered against him during litigation to enforce portions of a parenting plan and a child support order. Luthra contends that the trial court erred by holding him in contempt for not paying child support, by imposing sanctions against him for not acting in compliance with the parenting plan, and by awarding attorney fees against him. Ample evidence supports the trial court's factual findings and the contempt sanctions were well within its discretion. We affirm.

I

The procedural history of this case is lengthy and complex and is summarized here only as necessary to address issues properly raised in this

appeal. In 2010, upon the dissolution of Luthra and Aradhna Forrest's marriage, the trial court entered a child support order and a parenting plan after a lengthy trial. Pursuant to these orders, Luthra was to make regular child support payments and obtain intense home-based treatment for his severe obsessive compulsive disorder (OCD). The trial court found that Luthra's OCD "constitutes an emotional impairment that interferes with the father's performance of parenting functions under RCW 26.09.191(3)(b)." Based on the evidence at trial, the trial court specifically required intensive home-based OCD therapy.

Luthra paid some, but not all, of the ordered child support, refusing to pay the portion of his transfer payment related to childcare expenses. Although the plain language of the child support order required Luthra to pay a fixed amount for childcare as part of his regular transfer payment, Luthra professed a belief that he was only required to make childcare payments if Forrest gave him advance notice and the opportunity to preapprove such expenses. During litigation in 2013, the trial court entered as an order an amended final parenting plan to resolve issues that Luthra and Forrest identified as being in need of determination. The trial court directly addressed Luthra's professed confusion regarding childcare payments by including a provision in the amended final parenting plan specifically reiterating that Luthra's child support obligation included a monthly amount for childcare, as set forth in the order of child support, and did not require preapproval.[1]

_____

[1] Section 6.14 of the amended final parenting plan dated September 9, 2013 reads in pertinent part: **"Financial Obligations.** Neither parent shall financially obligate the other parent for any expense related to the child without the written consent of the other parent, with the

Luthra also never engaged in the ordered intensive home-based OCD treatment, prompting Forrest to bring contempt proceedings in July of 2015. Between July 23, 2015 and June 3, 2016, the trial court held seven hearings in which it admonished Luthra to begin complying with the court's orders or face sanctions for contempt. Luthra continued to fail to comply, leading the trial court to impose increasingly coercive sanctions against him, including financial penalties and assignment to work crew. Luthra appeals all of the orders stemming from those hearings.[2]

II

We review contempt orders for an abuse of discretion. In re Pers. Restraint of King, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988). Discretion is abused if the court's decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court's decision is manifestly unreasonable if its decision is outside the range of acceptable choices; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect legal standard. Littlefield, 133 Wn.2d at 47.

---

exception of the cost of daycare (selected by the mother) which expense is addressed in paragraph 3.15 of the Order of Child Support."

[2] Although Luthra, in blanket fashion, appeals every order entered during the contempt proceedings, we do not address all of them. We do not address his appeal from the order on civil motion entered on October 25, 2015 and from the order on third contempt review hearing entered on March 18, 2016 because Luthra did not appeal those orders within the time provided in RAP 5.2(a). Similarly, we do not address claims related to the trial court's findings in the 2010 parenting plan order and child support order as those orders became final years ago. Finally, we do not address any of Luthra's arguments raised for the first time in his reply brief. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (a reviewing court need not address claims raised for the first time in a reply brief).

It is "axiomatic that a court must be able to enforce its orders." In re Interest of M.B., 101 Wn. App. 425, 431, 3 P.3d 780 (2000). An "order of the court must be obeyed implicitly, according to its spirit, and in good faith." Blakiston v. Osgood Panel & Veneer Co., 173 Wash. 435, 438, 23 P.2d 397 (1933). When a parent does not make court ordered child support payments or refuses to comply with a parenting plan, RCW 26.18.050 authorizes the aggrieved party to initiate proceedings under chapter 7.21 RCW, the contempt of court statute, in order to enforce compliance with the court's order. Contempt of court is the "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). A trial court must make findings of fact setting forth the basis for its judgment of contempt, State ex rel. Dunn v. Plese, 134 Wash. 443, 447-48, 235 P. 961 (1925), including findings of "bad faith or intentional misconduct." In re Marriage of James, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). A trial court may then impose sanctions against the noncompliant parent which may include the payment of any losses suffered by the aggrieved party in connection with the contempt proceedings and reasonable attorney fees. RCW 7.21.030.

A

*Contempt of Child Support Order*

Luthra's monthly child support obligation was set forth in the trial court's order of child support dated July 8, 2010. Luthra was to make regular child support payments in the amount of $700 per month. The monthly transfer payment was based on a detailed breakdown attached to the court's order. That

- 4 -

order included, as part of the $700 monthly obligation, a fixed sum for childcare in the amount of $166.[3]

Luthra regularly paid only a portion of the ordered child support. He never paid the required portion of the transfer payment related to childcare expenses between the date on which the 2010 order was entered and the August 19, 2015 contempt hearing, accumulating $10,900 in past due child support. After notice and a hearing, the trial court found Luthra in contempt and entered a monetary judgment against him. The total judgment amount was determined by adding the amount of the past due child support, interest on the unpaid sum, and an amount for attorney fees incurred by Forrest in bringing enforcement proceedings.

Luthra does not contend that the 2010 child support order was unlawful or that he was unaware of it. Neither did he appeal it. Rather, Luthra asserts that his noncompliance was not willful. This is so, Luthra avers, because the portion of the child support payment covering childcare expenses required preapproval and mandatory referral to dispute resolution, which did not occur. Alternatively, he argues that his noncompliance was not willful because he was financially insolvent. Both claims fail.

Luthra's contention that the unpaid childcare expenses required preapproval, with any disputes referred to mandatory dispute resolution, is wrong. The child support order provision that he references explicitly applies only to childcare expenses in excess of the regular monthly amount, listed as

---

[3] Monthly daycare costs were set at $322 per month, of which Luthra's share was one half, or $166.

$166 per month. In fact, in bringing her motion, Forrest specifically refrained from seeking a contempt finding relating to the string of unmade payments for sums in excess of the $166 monthly transfer payment. Rather, her motion was confined solely to Luthra's failure to make payments of the basic obligation amount. Furthermore, in a 2013 proceeding, the trial court specifically reiterated that regular childcare expenses not in excess of $166 were not subject to the preapproval or dispute resolution provisions and were therefore part of Luthra's standard monthly child support obligation. Luthra was plainly made aware of his obligation and the trial court, in the contempt proceedings at issue, properly ruled that he had willfully not complied.

Alternatively, Luthra asserts that his failure to make court ordered child support payments was not willful because he lacked the financial means to comply. RCW 26.18.050(4) requires a child support obligor who contends that he or she lacks the financial means to comply to "establish that he or she exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself or herself able to comply with the court's order." Luthra made no such showing.

Although Luthra contends that he did not have the financial means to make the transfer payment, he failed to provide any evidence, other than bare assertions, to support this claim. He provided no detailed financial records or declarations to support his claimed insolvency.[4] The trial court found Luthra's

---

[4] At the August 19, 2015 hearing, Luthra's counsel admitted that he had not provided any new financial declarations or evidence other than those submitted in 2010. Luthra still had not provided the necessary financial information five hearings later, as of May 17, 2016. Additionally,

evidence unconvincing and his testimony untrustworthy. Indeed, Luthra failed to rebut assertions that his business was thriving and that his financial situation was stable. Accordingly, there was ample evidence to support the trial court's determination that Luthra willfully violated the child support order.

Luthra makes a conclusory claim that the sanctions entered against him for refusing to make the child support payments constituted an abuse of discretion. Again, we disagree.

RCW 26.18.050 specifically authorizes entry of a contempt order to enforce a child support obligation until the obligor has satisfied all duties of support, including amounts in arrears. Similarly, RCW 7.21.030 and RCW 26.09.160 authorize the court to order a party found in contempt to pay the aggrieved party for any losses incurred in connection with the enforcement proceedings. Here, the trial court's contempt order required Luthra to pay his past due child support, pay interest on that sum, and pay attorney fees incurred by Forrest—all remedies well within the range of acceptable choices. Littlefield, 133 Wn.2d at 47. There was no abuse of discretion.

B

*Contempt of Parenting Plan Order*

In its 2010 parenting plan order, the trial court found that Luthra's OCD "constitutes an emotional impairment that interferes with the father's performance of parenting functions under RCW 26.09.191(3)(b)." The trial court found that

---

Forrest pointed to Luthra's late model luxury cars, expensive vacations, and recent remodel to his house as evidence tending to negate his claim of financial distress.

Luthra's OCD manifestations were most severely pronounced at his home. [5] Therefore, the court specifically ordered Luthra to obtain intensive home-based OCD therapy with a provider approved by the court.

Luthra did not obtain intensive home-based OCD treatment between the time the parenting plan was entered and the contempt proceeding on August 19, 2015. Instead, he participated in occasional non-home-based treatment. The trial court found that Luthra was not in compliance with the parenting plan and sanctioned him with 30 days of work crew assignment. The trial court increased his work crew assignment by another 30 days after he continued to not comply a few months later and subsequently imposed a further 15 days after he again did not comply. Luthra was also ordered to pay attorney fees incurred by Forrest in bringing enforcement proceedings.

Luthra contends that his noncompliance was not willful. This is so, he asserts, because the court ordered therapy is not covered by his insurance and there is no treatment provider capable of performing home-based treatment in the Seattle area. He avers that his alternative OCD treatment regimen, therefore, satisfies the court's order. None of his contentions have merit.

Luthra's arguments challenge the trial court's original findings of fact entered in 2010. Luthra did not seek timely review of the 2010 factual findings and cannot do so now. Detonics ".45" Assocs. v. Bank of Cal., 97 Wn.2d 351, 353, 644 P.2d 1170 (1982). The trial court entertained evidence in 2010 and

---

[5] The trial court found that Luthra's OCD requires him to participate in lengthy "cleansing rituals" when family members enter his home or touch certain surfaces. The trial court found that this impairment was serious and had an adverse impact on the child's best interests.

- 8 -

again in 2015 regarding the necessity and availability of the ordered home-based treatment. The trial court found that it was available and ruled that it was mandatory. Indeed, during the 2015 contempt proceedings, the court had evidence before it that, contrary to Luthra's assertions, home-based therapy was provided by at least one local therapist in Luthra's insurance network. Furthermore, the court made clear that participating in the ordered treatment was not in any way contingent on insurance eligibility.

The trial court did not credit Luthra's claim that his current OCD treatment was in compliance with the order. There was evidence that this treatment was the same kind of treatment that he was engaged in at the time of the 2010 dissolution proceeding. During that proceeding, the trial court considered evidence from Luthra's doctor stating that Luthra needed more intense treatment than she could provide. For this and other reasons, the court in 2010 found his desired treatment regimen insufficient and specifically ordered the treatment set forth in its order. During the recent enforcement proceedings, the trial court again found that the treatment Luthra preferred did not satisfy the orders. Luthra had over five years to begin the necessary treatment with a court approved provider. Given Luthra's recalcitrance with regard to the trial court's order, there was ample evidence to support the trial court's finding of willful noncompliance.

Luthra next challenges his assignment to work crew, contending that this sanction was an abuse of discretion. This is so, he asserts, because it violated his right to be free from double jeopardy. This claim fails.

Contempt sanctions may be either civil or criminal. To determine whether a sanction is civil or criminal, we examine whether the sanction is coercive or punitive. M.B., 101 Wn. App. at 439. A sanction "remains coercive, and therefore civil, if the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." M.B., 101 Wn. App. at 439. "For double jeopardy to apply, the accused must have been subjected to two punitive proceedings." State v. Buckley, 83 Wn. App. 707, 713, 924 P.2d 40 (1996).

Here, the trial court sanctioned Luthra pursuant to RCW 7.21.030, which authorizes a broad array of remedial sanctions, including imprisonment. The ordered sanctions were civil—Luthra needed only to participate in the ordered treatment program to purge himself of contempt and avoid further contempt sanctions.

However, Luthra failed to perform this volitional act for over six years. The trial court first sanctioned Luthra with 30 days of work crew assignment on October 20, 2015. Luthra completed some of the work crew but still did not begin OCD treatment, leading the court, at the next hearing, to sanction him with 30 additional days of work crew. Some weeks later, the court again sanctioned him with an additional 15 day assignment after he persisted in noncompliance. The fact that the sanctions were entered for a determinate number of days does not render them punitive. M.B., 101 Wn. App. at 439. The trial court characterized these sanctions as motivating and concluded each hearing by delineating specifically what Luthra must do in order to purge his contempt. Luthra could have purged the entire work crew assignment by beginning and completing the

ordered treatment. Accordingly, these sanctions did not constitute a violation of Luthra's right to be free from double jeopardy.

Luthra further argues that the contempt sanctions violated his Eighth Amendment right to be free from cruel and unusual punishment.[6] Again Luthra's claim lacks merit.

The Eighth Amendment, like constitutional double jeopardy protections, applies to criminal but not civil contempt sanctions. See Ingraham v. Wright, 430 U.S. 651, 667-68, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977) (holding that the Eighth Amendment does not apply outside the criminal context). As the sanctions here are civil in nature, the Eighth Amendment is not implicated.

The trial court took pains to avoid incarcerating Luthra, despite the court's admission that it was running out of options to motivate him. The court repeatedly warned him that failure to comply would result in a jail term. The trial court crafted a contempt order, in careful consideration of RCW 7.21.030 and imposed work crew assignment to motivate Luthra to begin home-based OCD treatment. These sanctions were clearly coercive, and therefore civil. Given the record before it, the sanctions ordered by the trial court were well within the range of acceptable choices and, therefore, not an abuse of discretion. Littlefield, 133 Wn.2d at 47.

---

[6] At various times in his briefing, Luthra references other constitutional principles. He never properly develops or presents these claims. "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (internal quotation marks omitted) (quoting In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)).

III

A

Luthra next claims that the trial court abused its discretion by ordering him to pay attorney fees incurred by Forrest during four of the enforcement proceedings. We disagree.

An award of attorney fees is within the trial court's discretion and will be upheld unless there is a manifest abuse of that discretion. In re Marriage of Crosetto, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). Pursuant to RCW 7.21.030, the trial court may order the payment of any losses incurred by the aggrieved party in bringing enforcement proceedings, including attorney fees, as a remedial measure. See McFerran v. McFerran, 55 Wn.2d 471, 473-75, 348 P.2d 222 (1960) (upholding a trial court's award of attorney fees incurred by a wife in connection with her motion to enforce an order of support).

Furthermore, RCW 26.09.160 provides that:

> An attempt by a parent, in either the negotiation or the performance of a parenting plan, to condition one aspect of the parenting plan upon another, to condition payment of child support upon an aspect of the parenting plan, to refuse to pay ordered child support, to refuse to perform the duties provided in the parenting plan, or to hinder the performance by the other parent of duties provided in the parenting plan, *shall* be deemed bad faith and *shall* be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs incidental in bringing a motion for contempt of court.

RCW 26.09.160(1) (emphasis added).

This court has held that once the trial court has found a parent in contempt under RCW 26.09.160, it must award reasonable attorney fees and expenses

- 12 -

incurred by the aggrieved party in bringing enforcement proceedings. In re Marriage of Myers, 123 Wn. App. 889, 894, 99 P.3d 398 (2004).

Here, the trial court, after finding Luthra in contempt, reviewed the attorney fee declarations submitted by Forrest's counsel and found them "more than reasonable." The trial court stated in each order the amount and basis for the awards. Luthra fails to point to any way in which the fee awards were excessive or otherwise unreasonable. Accordingly, there was no abuse of discretion.

B

Finally, Forrest requests an award of appellate attorney fees based on the filing of a frivolous appeal or intransigence in this court, pursuant to RAP 18.9. We decline to award attorney fees on these grounds. However, an award of attorney fees for expenses incurred in responding to Luthra's appeal of the trial court's contempt orders is warranted. See In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). Not to award fees to Forrest would be to diminish the remedial effect of the remedies provided to her by the trial court. It would also disincentivize parties from litigating for appellate affirmance of contempt orders. Accordingly, we award Forrest attorney fees reasonably incurred in responding to Luthra's appeal of the trial court's contempt orders. Upon compliance with RAP 18.1(d), a commissioner of this court will enter an appropriate order.

Affirmed.

We concur: