# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BENROY GEORGE WOLK, | No. 60811-1-II |
| Respondent, | |
| v. | |
| BRIAN KRISTOPHER WOLK, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—In 2021, Benroy Wolk was granted a domestic violence protection order against Brian Wolk. The domestic violence protection order has been renewed twice, and the trial court has entered multiple findings of contempt against Brian. Brian appeals the superior court's denial of his motion to vacate the contempt findings and award of attorney fees, as well as the trial court's denial of Brian's motion for Benroy to show cause why the orders should not be vacated. Brian asserts that the superior court should have held a hearing and entered findings of fact and conclusions of law explaining its decision. Brian also presents arguments relating to the findings of contempt, including that the trial court should have set purge conditions and that the trial court's various orders violate Brian's First and Eighth Amendment rights. Benroy did not respond.

We hold that the trial court did not abuse its discretion by denying Brian's motion to vacate the contempt findings and award of attorney fees, and that it is outside the scope of our authority to set purge conditions on a superior court's contempt order. We decline to reach Brian's other arguments, as he cites no authority to support his assertions. Accordingly, we affirm.

FACTS

I. THE 2021 PETITION

In June 2021, Benroy Wolk petitioned for a domestic violence protection order (DVPO) against his adult son, Brian Wolk.[1] According to Benroy, Brian had engaged in multiple actions that caused Benroy "severe trauma and fear." Clerk's Papers (CP) at 325. Brian had reached out to Benroy's neighbors, claiming that Benroy is a pedophile and a sex offender who groomed and raped a minor relative of his late wife, Michelle. According to another of Benroy's neighbors, a man that the neighbor "hypothesized" was Benroy's son was surveilling Benroy's home in May 2021. *Id.* at 408. Benroy testified that in June 2021, Brian drove past his house multiple times and "caused an enormous scene" by screaming and swearing in front of the home. Verbatim Rep. of Proc. (VRP) at 16. Benroy's sister Emilia submitted a declaration that she was "very scared" for Benroy and his children because of derogatory messages that Brian had sent her about Benroy between March and June 2021. CP at 796. Emilia stated that "something is mentally wrong with Brian and he needs help." *Id.* When Brian learned that Benroy was set to receive an award from his alma mater, Brian contacted college faculty and told them that Benroy raped a minor relative of Benroy's late wife. The college then told Benroy that they were rescinding his award. Finally, in 2021, Brian filed a motion to have his right to own a firearm reinstated.

---

[1] This was not the first time that Benroy had sought a protection order against Brian—in 2016, Brian came to Benroy's property and struck Benroy's car repeatedly with an ax. Brian also pointed a gun at Benroy and threatened his life during this incident. As a result of Brian's actions, Brian was arrested and Benroy obtained a DVPO against Brian, which expired in 2018. Brian was convicted of harassment, fourth degree assault, and third degree malicious mischief, and was required to surrender all firearms and dangerous weapons.

As a result of these actions that occurred after the expiration of the previous DVPO, the superior court again granted Benroy a two-year DVPO in July 2021. The order states that Brian "shall undergo a comprehensive mental health evaluation and participate in any treatment indicated." *Id.* at 3. During the hearing at which the superior court granted the protective order, the court orally forbade Brian from speaking about his father "and the past" to third parties but did not list that restriction on the order. VRP at 40. Rather, the written condition of the order prevents Brian from "harassing, threatening, or stalking" Benroy or his minor children. CP at 2.

## II. CONTEMPT HEARINGS

In May 2022, Benroy filed a motion for an order of contempt. In his motion, Benroy claimed that Brian had created a Change.org petition calling for Benroy to be arrested for "sex crimes against a child" and a Facebook page titled "Beware.B.Wolk" which accused Benroy of grooming, molesting, and raping his wife's relative. *Id.* at 28, 41, 82 (boldface and italics omitted). Benroy also claimed that Brian failed to complete the mental health evaluation and requested attorney fees from Brian. At the hearing on this motion, the superior court weighed whether Brian's online posts constituted cyber harassment or cyber stalking. The superior court found Brian in contempt for violating the DVPO by posting the Change.org petition and the Facebook page. The order instructed Brian not to refer "at any time or in any manner to Ben Wolk (or his children)." *Id.* at 136. It also required Brian to obtain a mental health evaluation "within 45 days of July 22, 2022" and set a compliance hearing for September 2022. *Id.* The court clarified that it was not finding Brian in contempt for failing to receive a mental health evaluation, because it was not aware whether Brian had the ability to complete it. The court did not award attorney fees but

reserved judgment on the issue "depending [on] what happens at the next compliance hearing." VRP at 65.

The superior court conducted multiple compliance hearings following its first contempt finding. In October 2022, the trial court found that Brian was not "fully in compliance" with the requirement that he obtain a mental health evaluation; he had "started the process" by completing an intake appointment, but Brian advised the court that it would take several weeks to complete the recommended treatment. CP at 138; VRP at 72. The superior court reminded Brian "not to espouse his or any beliefs regarding Ben Wolk" and to remove "all web related material regarding Ben Wolk," as the Facebook page was still online. CP at 138-39.

In January 2023 and February 2023, the superior court conducted two more compliance hearings. By February, Brian stated that he had removed the posts from Change.org and Facebook. Benroy's counsel stated that they believed Brian had been evaluated because someone "reached out to Mr. Ben Wolk and did a whole interview with him," but that Brian had not provided proof of the evaluation to the court. VRP at 92-93. The superior court stated that it was not clear if Brian had completed the evaluation/treatment requirement and simply had not provided the results to the court, or if he had not yet completed the evaluation at all. As the original DVPO did not expressly require Brian to show proof of completion to the trial court, the superior court felt its hands were tied in terms of what relief it may grant to Benroy for contempt. Ultimately, it awarded attorney fees to Benroy.

### III. DVPO RENEWALS

In June 2023, Benroy filed a motion for renewal of the DVPO. He claimed that Brian had still not complied with the mental health requirement and that Brian had not stopped harassing

Benroy, either directly or "through others." CP at 170 (capitalization omitted). Benroy stated at the renewal hearing that he was harassed in the grocery store by "a friend of Brian's," and that Benroy had obtained an anti-harassment order against that person. VRP at 104. The superior court stated that it did not have "any documentation that showed [Brian] even attempted to comply" with the mental health evaluation and treatment requirement. *Id.* at 108. Based on this lack of information, the multiple findings of contempt against Brian, and Benroy's allegations that Brian was still violating the order, the trial court extended the DVPO for another year.

Benroy moved to renew the DVPO again in June 2024. Benroy attached multiple exhibits to his motion, including a report of a violation of the Ethics in Public Service Act that Brian had made against one of Benroy's colleagues. Benroy also attached security reports from his alma mater, detailing incidents in which Brian accosted college staff, mentioned Benroy, harassed students, and was escorted out of a public board meeting for disorderly behavior. Finally, Brian posted a letter on Substack in January 2024, calling for Benroy to be prosecuted for child molestation.

Brian filed a response to Benroy's motion for renewal. He argued that he had tried to comply with every requirement of the original DVPO and asked the court to "narrowly tailor" the DVPO to avoid restricting protected speech. CP at 229. He asserted that the trial court's instructions from the contempt orders were overbroad, that the DVPO contained a prior restraint on his speech, the DVPO unconstitutionally prevented him from publishing public records, and that Benroy "abuse[d]" the DVPO by asking the court to restrict Brian's activities. *Id.*

Brian also responded to the allegations that Benroy made in his motion to renew; he stated that they were either irrelevant, constitutionally protected activities, or falsehoods. Brian stated

that circumstances had changed substantially since the original DVPO was created because he had taken down all of the posts that violated the order, including the Substack post, and he had completed a 12-week domestic violence program. He also mentioned that Benroy had spread negative information about Brian on the internet and asserted that this context undercuts Benroy's claim that Brian should not be allowed to post about Benroy online.

In July 2024, the superior court conducted a hearing on Benroy's motion to renew. The court stated that the mental health records that Brian had filed were almost completely redacted, and the court could not ascertain "whether or not that's a valid test or a valid evaluation." VRP at 115. The trial court stated that Brian had not demonstrated a substantial change in circumstances based on the information he had filed. Brian argued that he had "privacy concerns" about the mental health evaluation and asked that the court review the document in camera, but the court refused. *Id.* at 116. The trial court renewed the DVPO for another two years based on Brian's multiple violations since the order was first entered and the redacted mental health evaluation.

Brian appealed the DVPO renewal, which is before this court and linked to this case.[2] After filing that appeal, Brian filed a motion to vacate the orders of contempt and attorney fees, as well as a motion for Benroy to show cause why the contempt orders should not be vacated. The superior court denied both motions. Brian filed a motion for reconsideration, which was denied as well. Brian appeals the trial court's denial of Brian's amended motion for order to show cause and motion to vacate the orders of contempt and attorney fees.

---

[2] Case No. 60055-2-II.

ANALYSIS

*A. Legal Principles*

CR 60(b)(11) allows a trial court to "relieve a party . . . from a final judgment, order, or proceeding." It exists to "serve the ends of justice in extreme, unexpected situations and when no other subsection of CR 60(b) applies," including "irregularities extraneous to the proceeding." *Shandola v. Henry*, 198 Wn. App. 889, 895, 396 P.3d 395 (2017). For example, the alleged unfairness of a separation agreement does not call for relief under CR 60(b)(11). *Yearout v. Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985).

We review a trial court's denial of a CR 60(b) motion to vacate for abuse of discretion. *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). " 'On review of an order denying a motion to vacate, only the propriety of the denial not the impropriety of the underlying judgment is before the reviewing court.' " *Wright v. B & L Props., Inc.*, 113 Wn. App. 450, 456, 53 P.3d 1041 (2002) (internal quotations omitted) (quoting *State v. Gaut*, 111 Wn. App. 875, 881, 46 P.3d 832 (1980)). A litigant may only attack a judgment by appealing that judgment, rather than appealing a denied CR 60(b) motion to vacate. *Bjurstrom v. Campbell*, 27 Wn. App. 449, 451, 618 P.2d 533 (1980).

*B. Application*

1. The trial court's denial of Brian's motion to vacate and motion for reconsideration

Brian first contends that the superior court abused its discretion by denying his motions for an order to show cause and to vacate without entering findings of fact and conclusions of law, without holding a hearing, and "without considering constitutional objections." Br. of Appellant at 10-11. He claims that these "omissions render the denial orders arbitrary and unsupported." *Id.*

at 11. However, Brian cites no authority holding that the trial court was required to enter findings of fact or hold a hearing before denying his motions. Where no authorities are cited in support of an argument, we are not required to consider the argument or search out authorities in support of the claim. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We, therefore, conclude that the trial court did not abuse its discretion by summarily denying the motions.

2. Brian's arguments regarding the original DVPO

Throughout the majority of his brief, Brian presents arguments that concern *not* the motions to vacate and to show cause, but rather the formation of the original DVPO and the contempt orders of July 2022 and October 2022. We are unable to address these arguments. If Brian wished to have these claimed errors considered, he was required to do that in a direct appeal of the DVPO and contempt orders, not in an appeal of the denial of his CR 60(b) motion. *Bjurstrom*, 27 Wn. App. at 451.

3. Purge conditions

Brian also asserts that the trial court erred by not setting purge conditions following the contempt findings, leaving him "without guidance as to how he could bring himself into compliance." Br. of Appellant at 21. He claims that this alleged error renders the contempt orders "unlawful." *Id.* Brian did not raise this issue at the trial court, so we decline to address it. Additionally, it is outside the scope of our authority to set purge conditions on a trial court's contempt order. We take this opportunity, however, to differentiate between remedial and punitive sanctions, as the distinction is important here.

Brian has not received punitive sanctions for failing to comply. He has been reminded of the DVPO's requirements and has been required to remove internet posts which violated the order. These are remedial sanctions, which Brian can purge by complying with the DVPO. *In re the Interest of J.L.*, 140 Wn. App. 438, 445, 166 P.3d 776 (2007) ("A conditional sanction is remedial if the contemnor[ ] has the ability to purge the contempt and avoid sanction by immediately complying with a condition."). Punitive sanctions, by contrast, punish the contemnor's failure to perform an act; a sanction is punitive if there is no immediate opportunity to purge. *Id.*

The superior court has been very clear on how Brian can comply with the DVPO. He must demonstrate to the court that he has obtained a mental health evaluation and show that he is completing all recommended treatment. As these are remedial sanctions, Brian may purge them through compliance, and the trial court was not required to set purge conditions.[3]

4. Attorney fees

Finally, Brian argues that the trial court's award of attorney fees is punitive and therefore violates the excessive fines clause of the Eighth Amendment to the United States Constitution. However, Brian presents insufficient argument in support of this claim, as well as no apposite authority linking the imposition of attorney fees following a contempt finding with the excessive fines clause of the Eighth Amendment. Consequently, we decline to consider this claim. *DeHeer*, 60 Wn.2d at 126.

---

[3] The trial court even noted in the January and February 2023 hearings that it thought punitive sanctions would be inappropriate given the manners in which Brian had violated the order.

No. 60811-1-II

CONCLUSION

The trial court did not abuse its discretion by denying Brian's motions, we are unable to address his arguments which concern orders not designated on appeal, and the trial court's findings of contempt and imposition of attorney fees are not punitive. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

PRICE, J.